# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 14-1212V
Filed: June 25, 2018
To Be Published

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ALICIA SKINNER-SMITH, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | * |
| | * |
| Respondent. | * |
| | * |

Pending civil action under Section 11 of the Vaccine Act; respondent moves to dismiss.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>Richard Gage</u>, Cheyenne, WY, for petitioner
<u>Justine E. Walters</u>, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION[1]

On December 17, 2014, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10–34 (2012), alleging that tetanus, diphtheria, and acellular pertussis ("Tdap") vaccine administered on February 6, 2012 at Ochsner Medical Center ("OMC")  caused her sharp pain, an abscess, and numerous other problems.  Pet. at ¶¶ 1 and 4. The case was assigned to the Special Processing Unit ("SPU").  On July 5, 2016, respondent filed his Rule 4(c) Report opposing compensation.  In his Report, respondent mentioned that the petition indicated "a medical review panel proceeding was initiated in Louisiana" in connection with the allegations in this case; however, no documentation in connection with these proceedings has been provided.  Doc 48, at 1-2.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy.  When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure.  If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

On July 13, 2016, the case was reassigned to the undersigned.

On August 3, 2016, the undersigned gave petitioner until October 3, 2016 to file an expert report.   After two motions for an extension of time, petitioner filed Dr. Janine Ferrier's expert report on November 14, 2016.

The undersigned gave petitioner until January 13, 2017 to file a supplemental expert report from Dr. Ferrier after a status conference on November 14, 2016 because Dr. Ferrier did not give a basis for her conclusion that petitioner's receipt of the Tdap vaccine caused her condition.   On January 13, 2017, petitioner filed a motion for an extension of time to file the report by February 27, 2017, which the undersigned granted.   On February 27, 2017, petitioner asked for an extension of time and the undersigned gave her a new deadline of April 28, 2017 to file the report.   On May 3, 2017, petitioner again asked for another extension of time until June 12, 2017 to file the report, which the undersigned granted.   Petitioner did not file Dr. Ferrier's supplemental expert report by June 12, 2017.

On June 14, 2017, the undersigned issued the first Order to Show Cause why this case shall not be dismissed for failure to prosecute under Vaccine Rule 21(b)(1).

On July 5, 2017, petitioner's counsel responded to the Order to Show Cause stating Dr. Ferrier had already opined that many of petitioner's symptoms are related to her Tdap vaccination and petitioner was trying to work through the OMC legal department in an attempt to secure more cooperation from petitioner's treating doctors.

On July 6, 2017, the undersigned ordered petitioner to file a status report advising the Court when she expected to complete the record by August 7, 2017.

On August 7, 2017, respondent filed a motion to dismiss and his reply to petitioner's response to the Order to Show Cause.

On the same day, petitioner filed a status report requesting additional time to find an expert to opine on this case.   The undersigned granted petitioner's informal motion and gave her 60 days until October 6, 2017 to complete the record.   The undersigned denied respondent's motion to dismiss because the record in this case was incomplete.

On October 6, 2017, petitioner filed a status report which was an informal motion for an extension of time.   The undersigned gave petitioner until October 18, 2017 to file updated medical records and a supplemental expert report.

On October 10, 2017, petitioner filed updated medical records.   On October 11, 2017, the undersigned issued an order discussing the recently filed medical records.   The undersigned suggested that petitioner's counsel should keep in mind this case has difficulties, explained the difficulties, and warned petitioner's counsel that she will not award attorneys' fees and costs unless there was a reasonable basis to proceed.

On October 19, 2017, petitioner filed a status report stating she requested a conference with her treating rheumatologist through the OMC legal department and was awaiting a response.

Also on October 19, 2017, the undersigned held a telephonic status conference and gave petitioner until November 20, 2017 to file outstanding records, records from the medical review panel ("MRP") proceeding in Louisiana, and an amended statement of completion.

On November 20, 2017, petitioner filed updated medical records and records from the MRP proceeding in Louisiana.

On November 21, 2017, the undersigned issued the second Order to Show Cause. Because petitioner had a pending medical malpractice claim against OMC when she filed her petition in the Vaccine Program, the undersigned ordered petitioner to show cause by December 21, 2017 why this case shall not be dismissed under Section 11(a)(5)(B) of Vaccine Act.

On December 6, 2017, petitioner responded to the Order to Show Cause of November 21, 2017 stating petitioner never instituted a civil action for her vaccine injuries.  Doc 76, at 1. Petitioner explained that an administrative MRP procedure is a pre-screening provision required before a civil action can be filed in Louisiana.  Id. at 2.  Petitioner's administrative proceeding was dismissed and precluded petitioner from bringing any civil action.  Id.

On January 4, 2018, respondent filed the first motion for an extension of time to file his reply to petitioner's response, which the undersigned granted on that day.  Respondent filed his second motion for an extension of time on March 8, 2018, which the undersigned also granted that day.

On May 7, 2018, respondent filed a reply to petitioner's response to the Order to Show Cause and the second motion to dismiss.  In his reply, respondent stated that under Louisiana state law, filing a request for review of a medical malpractice claim constitutes filing a "malpractice complaint" and initiates a civil action for damages.  Doc 84, at 3-4 (citing Nathan v. Touro Infirmary, 512 So.2d 352, 353 (La. 1987)).  Although the MRP does not directly award damages, the panel is the first step in a claimant's quest for an eventual damages award. Id. at 6.  Moreover, respondent mentioned the legislative history of the Vaccine Act that Congress intended to force petitioners to choose a forum in Section 11.  Id. at 8.

On June 1, 2018, petitioner filed a sur-response to respondent's reply stating the MRP proceeding in Louisiana can never amount to a "civil action for damages" but a "pre-suit" proceeding.   Doc 86, at 1-2 (citing Everett v. Goldman, 359 So.2d 1256, 1267 (La. 1978)). Furthermore, the outcome of the panel decision is not binding since medical review panelists are not judges.  Id. at 2 (citing Medine v. Roniger, 879 So.2d 706, 715 (La. 2004)).

On June 18, 2018, respondent replied to petitioner's sur-response stating the Louisiana

Supreme Court cases cited in petitioner's sur-response reinforced the view that a MRP request is the commencement of a civil action for damages on a medical malpractice claim under Louisiana Law.   Doc 87, at 1.   Respondent reiterated that the legislative history of the Vaccine Act precludes a petitioner from both receiving a damages award through settlement of a civil action and filing a petition under the Act.   Id. at 2.

On June 22, 2018, petitioner filed a sur-sur-response to respondent's sur-reply reiterating her position that she never filed a civil action.   Doc 88, at 1.

## DISCUSSION

42 U.S.C. § 300aa-11(a)(5)(B) provides "If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) for such injury or death."   Under Louisiana Code of Civil Procedure, "A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction."   LA. CODE CIV. PROC. ANN. art. 421 (2018).   Under the Louisiana Medical Malpractice Act ("MMA"), "No action against a health care provider covered by this part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this section."   LA. STAT. ANN. § 40:1231.8.B(1)(a)(i) (2017).   The Louisiana Supreme Court held in Nathan that "a medical malpractice action was in fact commenced by the claimant's filing with the Medical Review Panel."   Nathan v. Touro Infirmary, 512 So.2d 352, 353 (La. 1987).   The Louisiana Supreme Court explained that,

> Filing a complaint with the review panel is a mandatory initial step in a malpractice claim and a requirement before filing suit "in any court."   Therefore the filing with the panel was equivalent to the filing of a suit and for present purposes was actually the **commencement** of the suit.   The legislature acknowledged this relationship and provided that the filing of the request for a review of a claim suspended the running of prescription, . . . , just as the filing of a suit in a competent jurisdiction suspends the running of prescription.

Id. at 353-354.   The United States Court of Federal Claims has treated "filing," "bringing," and "commencing" a civil action equivalent under Section 11 of the Vaccine Act.   Lamb v. Sec'y of HHS, 24 Cl.Ct.255, 258 (1991) ("the generally accepted rule is that "filing" an action is equivalent to "bringing" an action or to "commencing" an action under Section 11.").[2]

Petitioner's medical malpractice panel request was filed on February 5, 2013 and dismissed on June 18, 2015.   Doc 74-1, at 1, 29.   Petitioner's MRP proceeding was pending when she filed her petition under the Vaccine Program on December 17, 2014.   Because filing a complaint with the MRP is a mandatory initial step in a malpractice claim, petitioner's filing

---

[2] In Lamb, the special master dismissed the petition under §11(a)(6), which prohibits participation in the Vaccine Program when petitioner brings a civil action after November 15, 1988 for damages for a vaccine-related injury or death before November 15, 1988.

with the MRP was actually the commencement of a civil action in a state court.   Commencing a civil action is deemed as equivalent to filing or bringing a civil action under Section 11 of the Vaccine Act.      The fact that the dismissal of petitioner's MRP proceeding precluded her from seeking a civil remedy in a state court reinforces that the MRP proceeding was a civil action. Furthermore, there is no language in Section 11 of the Vaccine Act that requires a civil action to be commenced in a state or federal court.   The fact that the Louisiana state court Judge Henry G. Sullivan, Jr. granted the motion to extend the MRP filed by OMC on September 22, 2014[3] and dismissed the MRP proceeding on June 18, 2015[4] further shows that this is a civil action according to Louisiana's view.

A MRP proceeding can lead to damages.   A MRP proceeding is the first step in a claimant's quest for a damages award, regardless of whether or not the MRP can directly award damages.   Moreover, the board of Louisiana Patient's Compensation Fund ("PCF") governs MRP proceedings.   The purpose of the PCF is to compensate victims of medical malpractice. Although the MRP does not directly award damages, it serves a damages function for medical malpractice claims in Louisiana.

In addition, the legislative history of the Vaccine Act makes clear that Congress intended to force an election of fora and to prevent simultaneous dual litigation.   H.R. 908, 99th Cong. § 2111 (1986); Hamilton v. Sec'y of HHS, 28 Fed.Cl. 315, 319 (1993).

Therefore, because a filing of a complaint with the MRP is a mandatory step to commence a medical malpractice action in Louisiana that could have led to damages, petitioner's filing of a complaint with the Louisiana MRP constituted a civil action under Section 11 of the Vaccine Rule.

The undersigned **GRANTS** respondent's motion to dismiss and **DISMISSES** this case for violation of Section 11(a)(5)(B) of the Vaccine Act.

## CONCLUSION

The petition is **DISMISSED**.   In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court is directed to enter judgment herewith.[5]

**IT IS SO ORDERED.**

Dated: June 25, 2018                                      s/ Laura D. Millman
                                                         Laura D. Millman
                                                              Special Master

---

[3] Doc 74-1, at 17.
[4] Id. at 29.
[5]  Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.