# In the United States Court of Federal Claims

### No. 14-1212V
### Filed: December 18, 2018
### Reissued for Publication: January 3, 2019[1]

```
* * * * * * * * * * * * * * *    *
ALICIA SKINNER-SMITH,            *
                                 *      Vaccine Act; Motion for
            Petitioner,          *      Review; 42 U.S.C. § 300aa-
      v.                         *      11(a)(5)(B); Statutory
                                 *      construction; Louisiana
SECRETARY OF HEALTH & HUMAN      *      Medical Review Panel
SERVICES,                        *      Proceedings
                                 *
            Respondent.          *
                                 *
* * * * * * * * * * * * * * *    *
```

**Richard Gage**, Richard Gage, P.C., Cheyenne, WY, for Petitioner.

**Robert P. Coleman, III**, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for Respondent. With him were **Gabrielle M. Fielding**, Assistant Director, Torts Branch, Civil Division, **Catherine E. Reeves**, Deputy Director, Torts Branch, Civil Division, **C. Salvatore D'Alessio**, Acting Director, Torts Branch, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division.

# O P I N I O N

<u>**HORN, J.**</u>

On December 17, 2014, Petitioner Alicia Skinner-Smith filed a petition for compensation with the National Vaccine Injury Compensation Program, under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1–300aa-34 (2012) (Vaccine Act). On June 25, 2018, Special Master Laura Millman of the United States Court of Federal Claims summarily dismissed Mrs. Skinner-Smith's petition for lack of subject matter jurisdiction pursuant to 42 U.S.C. § 300aa-11(a)(5)(B) (2012), which the parties refer to as "Section 11(a)(5)(B)" of the Vaccine Act. Section 11(a)(5)(B) bars a party from filing a petition for compensation in this court "[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death." <u>Skinner-Smith v. Sec'y of Health & Human Servs.</u>, No. 14-1212V, 2018 WL 3991343, at *3 (Spec. Mstr. Fed. Cl. June 25,

---

[1] This Opinion was issued under seal on December 18, 2018. The parties did not propose redactions to the December 18, 2018 Opinion, thus, the court issues the decision without redactions for public distribution.

2018) (quoting 42 U.S.C. § 300aa-11(a)(5)(B)). Special Master Millman concluded, in a brief decision, that because Petitioner had, what Special Master Millman defined as a pending proceeding before a medical review panel in Louisiana on the date that Petitioner filed her petition in the above-captioned case, the petition was in "violation" of Section 11(a)(5)(8) of the Vaccine Act. See Skinner-Smith v. Sec'y of Health & Human Servs., 2018 WL 3991343, at *4. On July 25, 2018, Petitioner filed a motion for review pursuant to Rule 23 of the Vaccine Rules of the United States Court of Federal Claims (Vaccine Rules) (2018) in this court to review the Special Master's decision dismissing her petition.

## BACKGROUND

### Medical Review Panel Proceedings in Louisiana

In 1975, the Louisiana State legislature enacted the Louisiana Medical Malpractice Act (MMA), LA. REV. STAT. ANN. § 40:1299.41 et seq., which was later recodified and redesignated in 2015 as LA. REV. STAT. ANN. § 40:1231.1, et seq. (2018). See Mariakis v. N. Oaks Health Sys., 2018-0165, p. 1 n.1 (La. App. 1 Cir. 9/21/18); --- So. 3d ---; 2018 WL 4523956, at *3 (noting that the MMA "was set forth in La. R.S. 40:1299.41, et seq." but that in 2015, the MMA was "redesignated" to "La. R.S. 40:1231.1., et seq." (emphasis in original)).[2] The MMA was passed "with the intended purposes of reducing or stabilizing medical malpractice insurance rates and ensuring the availability of affordable medical services to the general public." McGlothlin v. Christus St. Patrick Hosp., 2010-2775, p. 7 (La. 7/1/11), 65 So. 3d 1218, 1225. One of the principal advantages of the MMA is to limit the liability of health care providers who qualify[3] under the MMA "for all malpractice claims because of injuries to or death of any one patient" to $100,000.00, plus interest, and "[a]ny amount due from a judgment or settlement or from a final award in an arbitration proceeding" in excess of $100,000.00 "shall be paid from the patient's compensation

---

[2] Because no substantive changes have been made to sections of the MMA relevant to the above-captioned case, this court refers to the currently codified MMA at LA. REV. STAT. ANN. § 40:1231.1, et seq. See In re Tillman, 2015-1114, p. 1 n.1 (La. 3/15/16); 187 So. 3d 445, 446 n.1 (noting that recodification of the MMA made "no substantive changes" to the provisions of the MMA regarding a medical review panel proceeding, and, thus, referred to the "law's current designation of LSA-R.S. 40:1231.8(A)(2)(b)"); see also Matranga v. Parish Anesthesia of Jefferson, LLC, 17-73, p. 8-9 (La. App. 5 Cir. 8/29/18); 254 So. 3d 1238, 1238 (citing to the recodified version of the MMA even though the medical review panel proceeding was filed in 2009 and completed in 2010, years before the MMA was recodified).

[3] A health care provider qualifies for protection under the MMA by maintaining malpractice liability insurance and filing "proof of financial responsibility" with the State of Louisiana. See LA. REV. STAT. ANN. § 40:1231.6(A)-(B). A health care provider can choose not to qualify under the MMA, and if so, "the patient of a health care provider who has not qualified is no different from any other tort or contract victim, while the patient of a qualified health care provider (one who has qualified under the act) is regulated by the act insofar as malpractice recovery is concerned." Everett v. Goldman, 359 So. 2d 1256, 1262 (La. 1978).

fund." LA. REV. STAT. ANN. § 40.1231.2(A); see also Sewell v. Doctors Hosp., 600 So. 2d 577, 578 n.1 (La. 1992). In addition, the MMA limits the total amount a claimant can recover "for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits" to "five hundred thousand dollars plus interest and cost." LA. REV. STAT. ANN. § 40.1231.2(B). The Patient's Compensation Fund (PCF) is a fund comprised of monies stemming from "an annual surcharge" levied on "all health care providers in Louisiana" who qualify under the MMA. Id. at § 40.1231.4(A)-(B). The annual surcharge is collected by and deposited into the PCF by the PCF Oversight Board, which is a nine-member Board appointed by the Governor of Louisiana and established within the Division of Administration of Louisiana, a state executive agency within the State of Louisiana Office of the Governor. See id. at § 40.1231.4(D)(1)(a) ("The Patient's Compensation Fund Oversight Board is hereby created and established in the office of the governor, division of administration. The board shall be comprised of nine members, appointed by the governor subject to Senate confirmation."). The PCF Oversight Board also carries out "[t]he functions of collecting, administering, and protecting the fund, including all matters relating to determining surcharge rates, establishing reserves, the evaluating and settlement of claims, and relating to the defense of the fund." Id. at § 40.1231.4(A)(5)(b).

The MMA also provides that before an individual may file a medical malpractice claim in Louisiana State Court or in any Federal District Court which has diversity jurisdiction over a medical malpractice claim under Louisiana State law,[4] an individual must first participate in a proceeding before a panel of three medical professionals and one attorney chairman, which in turn, issues an "expert opinion" as to whether the evidence "supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care." Id. at § 40:1231.8(B)(1)(a)(i) ("No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section."); see also Sewell v. Doctors Hosp., 600 So. 2d at 578 n.1 (noting that an advantage of the MMA is "the requirement that all claims for malpractice must be submitted initially to a medical review panel"). As the Supreme Court of Louisiana explained in McGlothlin v. Christus St. Patrick Hospital, 65 So. 3d at 1226, a proceeding before a medical review panel is a "[p]retrial screening" that is

"designed to weed out frivolous claims without the delay or expense of a court trial. It is thought that the use of such panels will encourage settlement because both parties will be given a preliminary view of the merits of the case. If a claim is found by the panel to be without merit it is thought that

---

[4] See Mogabgab v. Stein, et al., 834 F. Supp. 2d 499, 499 (E.D. La. 2011) (noting that the MMA which "provid[es] for the presentation of a claim of malpractice to a Medical Review Panel prior to District Court proceedings is a substantive rule of law that must be applied in a Federal diversity action"); see also Seoane v. Ortho Pharm., Inc., 472 F. Supp. 468, 471 (E.D. La. 1979) (noting that "[t]he federal courts which have considered this question, with one exception, have concluded that medical malpractice review panel provisions of state laws are substantive rules of law of the forum which must be applied by a federal court in a diversity case").

the claimant will be likely to abandon his claim or agree to a nominal settlement. Moreover, a plaintiff who gains a favorable opinion from the panel may be able to negotiate a favorable settlement with his defendants, a procedure which also avoids much of the time and expense of a trial."

Id. (quoting Everett v. Goldman, 359 So. 2d at 1264); Perritt v. Dona, 2002-2601, p. 8 (La. 7/2/03); 849 So. 2d 56, 61 ("The MMA requires that all claims against health care providers be reviewed or 'filtered' through a medical review panel before proceeding to any other court."); Rhodes v. Schultis, 13-663, p. 6 (La. App. 5 Cir. 4/23/14); 140 So. 3d 331, 336 ("The Louisiana Medical Malpractice Act requires that all medical malpractice claims against qualified health care providers are to be submitted to a medical review panel prior to filing suit in any court. The purpose of pre-trial screening through a medical review panel is to weed out frivolous claims without the delay or expense of a court trial." (internal citations omitted)); Ward v. Vivian Healthcare and Rehab. Ctr., 47,649, p. 5 (La. App. 2 Cir. 5/15/13); 116 So. 3d 870, 874 ("One such advantage is the requirement that a claim first be submitted to a medical review panel before the malpractice action may commence in court. The medical review panel is a filtering process that is meant to weed out frivolous claims or prompt defendants to settle valid claims reasonably." (internal citations omitted)). In addition, if the individual fails to present his or her medical malpractice claim to a medical review panel before filing an action in a court of competent jurisdiction, the medical malpractice lawsuit filed will be dismissed by the court as premature. See Blevins v. Hamilton Med. Ctr., Inc., 2007-127, p. 4 (La. 6/29/07); 959 So. 2d 440, 444 ("Under the LMMA [Louisiana Medical Malpractice Act], a medical malpractice claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel."); see also Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson, 2004-0451, p. 4 (La. 12/1/04); 888 So. 2d 782, 785 ("An action is premature when it is brought before the right to enforce it has accrued. Under the Medical Malpractice Act, a medical malpractice claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel."); Atkinson v. Lammico Ins. Co., 2011-13, p. 3 (La. App. 3 Cir. 5/4/11); 63 So. 3d 1176, 1179 ("[I]f the plaintiff fails to submit the claim to a medical review panel before the institution of suit, the appropriate procedural remedy is a timely filed exception of prematurity.").

The medical review panel proceeding is initiated when a claimant files his or her "request for review of a malpractice claim or a malpractice complaint," with the Division of Administration of Louisiana, which, as previously noted, is a state executive agency within the Office of the Governor of Louisiana. See LA. REV. STAT. ANN. § 40:1231.8(A)(2)(b)(i) ("The request for review of a medical malpractice claim under this Section shall be deemed filed on the date the request is: (aa) Sent, if the request is electronically sent by facsimile transmission or other authorized means, as provide by R.S. 9:2615(A), to the division of administration."). The request for review must contain the following:

(i) A request for the formation of a medical review panel.
(ii) The name of only one patient for whom, or on whose behalf, the request for review is being filed; however, if the claim involves the care of a pregnant mother and her unborn child, then naming the mother as the patient shall be sufficient.
(iii) The names of the claimants.
(iv) The names of the defendant health care providers.
(v) The dates of the alleged malpractice.
(vi) A brief description of the alleged malpractice as to each named defendant health care provider.
(vii) A brief description of the alleged injuries.

Id. at § 40:1231.8(A)(1)(b). The filing of a request for review suspends the "running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review." Id. at § 40:1231.8(A)(2)(a).

The Division of Administration plays a very limited role in a medical review panel proceeding. Upon receipt of the request for review, the Division of Administration's only task is to forward the request to the PCF Oversight Board, which is a nine-member board within the Division of Administration. See id. at § 40.1231.8(A)(2)(b)(ii). Once the request is forwarded, the Division of Administration no longer plays a role in a medical review panel proceeding, which is then overseen by two separate entities, the PCF Oversight Board and the medical review panel. The PCF Oversight Board, which receives the request for review of a medical panel proceeding from the Division of Administration, oversees the clerical functions of the medical review panel proceeding, including receiving and processing the filing fee from the claimant, notifying the defending party of the request for review, and forwarding a copy of the request for review to the defending party. See id. at § 40.1231.8(A)(2)(3). The Louisiana State Courts have explained that the PCF Oversight Board's role in a medical review panel proceeding is "clerical or ministerial in nature to facilitate the medical review process," and "stands in the same position as clerks of court, who are charged by the legislature with the duty to receive and process pleadings filed in judicial proceedings." Franks v. La. Patient's Compensation Fund Oversight Bd., 2016-0765, p. 8 (La. App. 1 Cir. 5/3/17); 220 So. 3d 862, 868; see also Berthelot v. Patients' Compensation Fund Oversight Bd., 2007-0112, p. 10 (La. App. 1 Cir. 11/2/07); 977 So. 2d 967, 973 ("[T]he PCF's duties under LSA-R.S. 40:1299.47 A [sic] are not adjudicative in nature. Rather, the PCF's mandatory duty to act when it receives a request to invoke a medical review panel is clerical or ministerial in nature and is designed to facilitate the medical review process." (internal citation omitted)).

Unlike the PCF Oversight Board, the medical review panel focuses on the substantive aspects of the proceeding. Notably, the medical review panel "is not a judge or a jury but merely a body of experts assembled to evaluate a medical claim and to provide an expert opinion." Jeansonne v. Bonano, 2017-0828, p. 5 (La. App. 1 Cir. 1/23/18); 241 So. 3d 1027, 1031 (citing Derouen v. Kolb, 397 So. 2d 791, 784 (La. 1981)).

The medical review panel is comprised of three healthcare professionals and one attorney chairman. The four panelists are private individuals selected by the parties to participate in the medical review panel proceeding. See LA. REV. STAT. ANN. § 40:1231.8.C. In particular, the parties jointly select the attorney chairman, who acts "as chairman of the panel and in an advisory capacity." See id. Each party may then each select a medical professional. See id. at § 40:1231.8.C.3. The two selected medical professionals then select the third and final medical professional for the panel. See id. If a party fails to select a medical professional, the attorney chairman shall make the selection. See id. The medical review panel reviews the evidence submitted by the parties and has the "sole" duty to issue an "expert opinion" as to the evidence presented. Id. at § 40:1231.8(G) ("The panel shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care."); see also McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1229 ("[T]he panel's sole duty under our medical malpractice scheme is to express its expert opinion as to whether or not the evidence supports the conclusion the defendant or defendants acted or failed to act within the appropriate standard of care." (internal quotation marks omitted)).

The medical review panel is statutorily authorized to issue one of four specific findings in its expert opinion: (1) that the "evidence supports the conclusion that defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint," (2) that "[t]he evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care," (3) that "there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration" for a court of law to the extent that a lawsuit is filed after the conclusion of the medical review panel proceeding,  and (4) if the medical review panel concludes that defendant failed to comply with the appropriate standard of care, that "the conduct complained of was or was not a factor of the resultant damages. If such conduct was a factor, whether the plaintiff suffered: (a) any disability and the extent and duration of the disability, and (b) any permanent impairment and the percentage of the impairment." LA. REV. STAT. ANN. § 40:1231.8(G)(1)-(4). The medical review panel, however, does not make a finding as to the monetary amount of damages due to a claimant nor does the medical review panel have authority to award any damages. See id.; see also Perritt v. Dona, 849 So. 2d at 62 ("No findings are made by the panel as to damages." (quoting Everett v. Goldman, 359 So. 2d at 1263)). Once a medical review panel proceeding has concluded, and regardless of the conclusion reached by the medical review panel, the claimant, if he or she so chooses, may file an action for medical malpractice in a court of competent jurisdiction. See LA. REV. STAT. ANN. § 40:1231.8(B)(1)(a)(i); see also Beaucoudray v. Walsh, 2007-0818, p. 18 (La. App. 4 Cir. 3/12/09); 9 So. 3d 916, 926 ("A MRP [medical review panel] opinion adverse to a patient does not preclude the filing of a lawsuit against the qualified healthcare providers. The provision . . . which states that the panel opinion is not 'conclusive,' means only that the panel opinion, whatever conclusion is reached, 'does not preclude subsequent filing of a lawsuit . . . .'" (internal citations omitted) (second ellipse in original)).

The medical review panel's expert opinion is not binding on any future court action. See LA. REV. STAT. ANN. § 40:1231.8(H); see also Ward v. Vivian Healthcare & Rehab. Ctr., 116 So. 3d at 874 ("[T]he medical review panel's findings are not binding on the parties." (citing Perritt v. Dona, 849 So. 2d at 62)). Specifically,

> [a]ny report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify.

LA. REV. STAT. ANN. § 40:1231.8(H). Thus, once a claimant completes a medical review panel proceeding and proceeds to file an action in court, the medical review panel's expert opinion becomes the "equivalent to expert medical evidence." Jeansonne v. Bonano, 241 So. 3d at 1031.  "However, as with any other expert testimony, the Medical Review Panel Opinion is subject to review and a trial court may reject it as inadmissible." Matranga v. Parish Anesthesia of Jefferson, LLC, 14-448, p. 18 (La. App. 5 Cir. 5/14/15); 170 So. 3d 1077, 1091 (citing McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1227). "The opinion, therefore, can be used by either the patient or the qualified health care provider, and the jury, as trier of fact, is free to accept or reject any portion or all of the opinion." McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1227. In addition, "nothing in the Medical Malpractice Act prevents Plaintiffs from presenting evidence, including expert medical testimony, at trial that contradicts the panel's opinion." Rhodes v. Schultis, 140 So. 3d at 337.

During the life of a medical review panel proceeding, the parties, under very limited, specified circumstances, may temporarily invoke the jurisdiction of a Louisiana State Court. For example, upon the request of the parties, a court may issue an order to extend the twelve-month time period in which the medical review panel has to issue an opinion. See LA. REV. STAT. ANN. § 40:1231.8(B)(1)(b). Additionally, in the event a party refuses to comply with the provisions of the MMA governing medical review panel proceedings, the aggrieved party may "petition any district court of proper venue over the parties for an order directing that the parties comply with the medical review panel provisions of the medical malpractice act." Id. at § 40:1231.8(C)(6). Also, "[u]pon request of any party, or upon request of any two panel members, the clerk of any district court shall issue subpoenas and subpoenas duces tecum in aid of the taking of depositions and the production of documentary evidence for inspection and/or copying" in order to gather evidence to be presented before a medical review panel. Id. at § 40:1231.8(D)(4). The medical review panel, however, is the body that initially has the authority to issue an expert opinion as to whether the defending party "acted or failed to act within the appropriate standards of care." Id. at § 40:1231.8(G).

**Petitioner's Medical Review Panel Proceeding**

On February 6, 2012, Petitioner Alicia Skinner-Smith received the Tetanus, Diphtheria, Pertussis vaccination (Tdap vaccination) at the Ochsner Medical Center in New Orleans, Louisiana, the vaccination at issue in the above-captioned case. On February 5, 2013, Petitioner submitted a letter to the State of Louisiana's Division of Administration, which included a request that a medical review panel be convened to review "the care rendered" to Petitioner during her visit to the Ochsner Medical Center Main Campus Emergency Room on February 6, 2012, when she received her Tdap vaccination, and also during other visits to the Ochsner Medical Center Campus on February 24, 2012 and on February 27, 2012. Petitioner specifically alleged in her February 5, 2013 request for review that she experienced "medical complications" from the Tdap vaccination received on February 6, 2012 and that she was dissatisfied with medical care rendered to her by medical personnel at the Ochsner Medical Center Main Campus Emergency Room on February 24, 2012 and February 27, 2012.

In September of 2014, the Ochsner Clinic Foundation, the defending party in Petitioner's medical review panel proceeding, filed an unopposed motion in the 24th Judicial District Court for the Parish of Jefferson, Louisiana, requesting an extension of time "in order for the medical review panel to convene and render an opinion" on Petitioner's request for review pending before the medical review panel. On September 22, 2014, Louisiana State District Court Judge Henry Sullivan of the 24th Judicial District Court for the Parish of Jefferson, Louisiana granted the Ochsner Clinic Foundation's motion, and "[o]rdered that the life of the Medical Review Panel examining the medical negligence claim Alicia Skinner-Smith versus Ochsner Clinic Foundation is hereby extended through November 18, 2015." The medical review panel proceeding caption of the September 22, 2014 Order read: "In re: Medical Review Panel Proceedings in the Matter of Alicia Skinner-Smith versus Ochsner Clinic Foundation" and listed the request for review number as 742-484.

On December 17, 2014, while Petitioner's request for review was still pending before the medical review panel in Louisiana, Petitioner filed her petition for compensation with the Office of Special Masters at the United States Court of Federal Claims. Petitioner alleges in her motion for review currently pending before this court that she sought no further action in her medical review panel proceeding in Louisiana after filing her December 17, 2014 petition with the United States Court of Federal Claims, Office of Special Masters in the above-captioned case. On April 15, 2015, Louisiana State District Court Judge Sullivan held a hearing on the Ochsner Clinic Foundation's motion to dismiss Petitioner's medical review panel proceeding against the Ochsner Clinic Foundation with prejudice and "For Failure To Comply" with a previous Order to Compel. On that same day, April 15, 2015, Louisiana State District Court Judge Sullivan orally granted Ochsner Clinic Foundation's motion to dismiss and ordered that the medical review panel reviewing Petitioner's medical malpractice claim be dissolved, without having issued any expert opinion. On June 2, 2015, the State of Louisiana's Division of Administration wrote to Petitioner, informing her that the medical review panel had been dissolved as of that

same date, June 2, 2015. On June 18, 2015, Louisiana State District Court Judge Sullivan memorialized his April 15, 2015 oral Order in a written Order.

The December 17, 2014 petition for compensation filed with the Office of Special Masters in the above-captioned case alleged that the Tdap vaccination Petitioner had received on February 6, 2012 resulted in "an abscess, pain and related injuries." Petitioner also alleged that she

> has not, nor has anyone to Petitioner's knowledge, filed, participated in, or collected an award or settlement from any civil action for the above described vaccine injury. Through previous local counsel, a medical review panel proceeding was initiated in Louisiana. However, this is not a civil action. No complaint was ever filed and no settlement ever reached.

Based on the record of the proceedings before Special Master Millman, the parties spent the first year and half of Petitioner's case investigating discrepancies in Petitioner's medical records, including regarding the injection site of Petitioner's Tdap vaccine. Then, on April 27, 2016, after extensive briefing by the parties regarding Petitioner's injection site, the Special Master issued a "Ruling on Facts," concluding that "petitioner received her February 6, 2012 Tdap vaccination in the left dorsal gluteal muscle." With the site of Petitioner's vaccination officially established, on July 5, 2016, Respondent filed its report pursuant to Rule 4(c) of the Vaccine Rules, which required Respondent to "file a report setting forth a full and complete statement of its position as to why an award should or should not be granted." RCFC Vaccine Rule 4(c) (2016). Respondent opposed an award of compensation and argued that based on the record before the court, Petitioner could not prove that the Tdap vaccine she had received caused her injuries. Respondent also noted in the Rule 4(c) report that the petition in the above-captioned case indicated that Petitioner had participated in a "medical review panel proceeding" in Louisiana and requested that Petitioner "produce all evidence, information, and documentation from the medical review panel proceedings in Louisiana."

For reasons not apparent in the record before the court, Petitioner delayed one year and four months from the filing of Respondent's July 5, 2016 Rule 4(c) report to file the documentation regarding her medical review panel proceeding in Louisiana, which she filed on November 20, 2017. On November 21, 2017, Special Master Millman issued an Order to Show Cause why the petition in the above-captioned case should not be dismissed pursuant to 42 U.S.C. § 300aa-11(a)(5)(B), which, according to the November 21, 2017 Order, "prohibits people from filing vaccine petitions while a civil action is pending against a vaccine administrator." Special Master Millman noted in the November 21, 2017 Order that:

> When petitioner filed her petition, she had a pending medical malpractice claim against OMC[5] [Ochsner Medical Center], which she had filed on

---

[5] Based on the record before the court, Petitioner's medical review panel proceeding was not brought against the "Ochsner Medical Center" but against the "Ochsner Clinic Foundation."

February 5, 2013, in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Case No. 742-484, which Judge Henry G. Sullivan, Jr. dismissed on June 18, 2015.[6] OMC was the vaccine administrator. June 18, 2015 is six months after petitioner filed her petition in the Vaccine Program.

(internal references omitted).

On December 6, 2017, Petitioner responded to the Special Master's Order to Show Cause. Petitioner argued that that she "has never instituted a civil action for her vaccine injuries," and indicated that the medical review panel proceeding she commenced in Louisiana was a "pre-screening provision required before any civil action can be filed." Petitioner also noted that because her medical review panel proceeding was dismissed with prejudice, under Louisiana State law, Petitioner was "legally precluded from filing a civil action" for medical malpractice in Louisiana State Courts. On May 7, 2018 Respondent filed its response to Petitioner's December 6, 2017 filing, arguing that under Louisiana State law, "filing a request for review of a medical malpractice claim as petitioner did, constitutes a 'malpractice complaint' and initiates a civil action for damages." On that same day, Respondent moved for immediate dismissal of the petition for violating Section 11(a)(5)(B) of the Vaccine Act.

On June 25, 2018, Special Master Millman issued a five-page decision, which dismissed the petition in the above-captioned case for violating Section 11(a)(5)(B) of the Vaccine Act. See Skinner-Smith v. Sec'y of Health & Human Servs., 2018 WL 3991343, at *4. Special Master Millman quoted the provision, stating: "'[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) for such injury or death.'" Id. at *3 (quoting 42 U.S.C. § 300aa-11(a)(5)(B)). Special Master Millman also referred to Nathan v. Touro Infirmary, 512 So. 2d 352 (La. 1987), a case decided by the Supreme Court of Louisiana, which stated in less than clear terms:

Filing a complaint with the review panel is a mandatory initial step in a malpractice claim and a requirement before filing suit "in any court." Therefore the filing with the panel was equivalent to the filing of a suit and for present purposes was actually the **commencement** of the suit. The legislature acknowledged this relationship and provided that the filing of the request for a review of a claim suspended the running of prescription, . . . , just as the filing of a suit in a competent jurisdiction suspends the running of prescription.

---

[6] Based on the record before the court, Petitioner did not file her medical review panel proceeding in the 24th Judicial District Court for the Parish of Jefferson, Louisiana on February 5, 2013. Instead, as the record indicates, on February 5, 2013, Petitioner commenced her medical review panel proceeding before the State of Louisiana Division of Administration, a state executive agency within the Office of the Governor of Louisiana, when she sent a letter requesting that a medical review panel proceeding be convened.

Id. (bold in original; underscore added) (quoting Nathan v. Touro Infirmary, 512 So. 2d at 353-54). The Nathan decision states somewhat conflicting conclusions, that a Louisiana medical review panel proceeding occurred "before filing suit 'in any court,'" "was equivalent to the filing of a suit," and suspended the running of prescription "just as the filing of a suit." Special Master Millman, in her brief analysis, also cited general language in Lamb v. Secretary of Health & Human Services, 24 Cl. Ct. 255, 258 (1991), a 1991 United States Claims Court case regarding a Pennsylvania State Court action. Special Master Millman noted that:

> The United States Court of Federal Claims has treated "filing," "bringing," and "commencing" a civil action equivalent under Section 11 of the Vaccine Act. Lamb v. Sec'y of HHS, 24 Cl.Ct.255 [sic], 258 (1991) ("the generally accepted rule is that "filing" [sic] an action is equivalent to "bringing" [sic] an action or to "commencing" [sic] an action under Section 11.").

Skinner-Smith v. Sec'y of Health & Human Servs., 2018 WL 3991343, at *3. Special Master Millman further indicated in her June 25, 2018 decision, without explaining or citing the basis for her conclusion, that, "[a]lthough the MRP does not directly award damages, it serves a damages function for medical malpractice claims in Louisiana." Id. at *4. Special Master Millman then concluded that, "because a filing of a complaint with the MRP is a mandatory step to commence a medical malpractice action in Louisiana that could have led to damages, petitioner's filing of a complaint with the Louisiana MRP constituted a civil action under Section 11 of the Vaccine Rule." Id.

On July 25, 2018, Petitioner filed a motion for review of Special Master Millman's June 25, 2018 decision dismissing her petition in the above-captioned case. Petitioner argues that Special Master Millman "erred as a matter of law in dismissing Petitioner's case after finding Petitioner violated 42 U.S.C. § 300aa-11(a)(5)(B) by filing a vaccine petition while a civil action was pending." On August 24, 2018, Respondent filed its response to Petitioner's motion for review, arguing that Special Master Millman properly dismissed the petition and that the Special Master's decision should be affirmed by this court. On September 27, 2018, Petitioner filed her reply in support of her motion for review, reiterating that the phrase "civil action" refers to "an action brought in a court of law," and that because her medical review panel proceeding was not before a court, it was not a "civil action." (citing Fed. R. Civ. P. 2 (2018); Fed. R. Civ. P. 3 (2018)). The court heard oral argument on Petitioner's motion for review and in response to issues raised at the oral argument, the parties filed simultaneous supplemental briefs.

## DISCUSSION

When reviewing a Special Master's decision, the assigned Judge of the United States Court of Federal Claims shall:

> (A)  uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B)  set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2). The legislative history of the Vaccine Act states: "The conferees have provided for a limited standard for appeal from the [special] master's decision and do not intend that this procedure be used frequently, but rather in those cases in which a truly arbitrary decision has been made." H.R. Rep. No. 101-386, at 517 (1989) (Conf. Rep.), reprinted in 1989 U.S.C.C.A.N. 3018, 3120.

In order to recover under the Vaccine Act, Petitioners must prove by a preponderance of the evidence that the vaccine caused the purported injury. See W.C. v. Sec'y of Health & Human Servs., 704 F.3d 1352, 1355-56 (Fed. Cir. 2013) ("The Vaccine Act created the National Vaccine Injury Compensation Program, which allows certain petitioners to be compensated upon showing, among other things, that a person 'sustained, or had significantly aggravated' a vaccine-related 'illness, disability, injury, or condition.'" (quoting 42 U.S.C. § 300aa–11(c)(1)(C))); see also Lombardi v. Sec'y of Health & Human Servs., 656 F.3d 1343, 1350 (Fed. Cir. 2011) ("A petitioner seeking compensation under the Vaccine Act must prove by a preponderance of the evidence that the injury or death at issue was caused by a vaccine."); D'Angiolini v. Sec'y of Health & Human Servs., 122 Fed. Cl. 86, 97 (2015) ("The function of a special master is . . . to determine based on the record evidence as a whole and the totality of the case, whether it has been shown by a preponderance of the evidence that a vaccine caused [petitioner's] injury." (alteration in original)), aff'd, 645 F. App'x 1002 (Fed. Cir. 2016); Shapiro v. Sec'y of Health & Human Servs., 105 Fed. Cl. 353, 358 (2012), aff'd, 503 F. App'x 952 (Fed. Cir. 2013); Jarvis v. Sec'y of Health & Human Servs., 99 Fed. Cl. 47, 54 (2011).

Regarding the standard of review, articulated in Markovich v. Secretary of Health & Human Services, the United States Court of Appeals for the Federal Circuit wrote, "[u]nder the Vaccine Act, the Court of Federal Claims reviews the Chief Special Master's decision to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' 42 U.S.C. § 300aa-12(e)(2)(B)." Markovich v. Sec'y of Health & Human Servs., 477 F.3d 1353, 1355-56 (Fed. Cir.), cert. denied, 552 U.S. 816 (2007); see also Contreras v. Sec'y of Health & Human Servs., 844 F.3d 1363, 1368 (Fed. Cir. 2017) ("We give no deference to the Claims Court's or Special Master's determinations of law, but uphold the Special Master's findings of fact unless they are arbitrary or capricious. We review discretionary rulings . . . under the abuse of discretion standard." (internal quotation marks and internal citation omitted)); Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d 1363, 1366 (Fed. Cir.) (noting that "we 'perform[ ] the same task as the Court of Federal Claims and determine[ ] anew whether the special master's findings were arbitrary or capricious'" (brackets in original) (quoting Lampe v. Sec'y of Health & Human Servs., 219 F.3d 1357, 1360 (Fed. Cir. 2000))), reh'g and reh'g en banc denied (Fed. Cir. 2013); W.C. v. Sec'y of Health & Human Servs., 704

F.3d at 1355; Hibbard v. Sec'y of Health & Human Servs., 698 F.3d 1355, 1363 (Fed. Cir. 2012); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347 (Fed. Cir.) ("Under the Vaccine Act, we review a decision of the special master under the same standard as the Court of Federal Claims and determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 42 U.S.C. § 300aa-12(e)(2)(B))), reh'g and reh'g en banc denied (Fed. Cir. 2008); de Bazan v. Sec'y of Health & Human Servs., 539 F.3d 1347, 1350 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2008); Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1277 (Fed. Cir. 2005); Greene v. Sec'y of Health & Human Servs., 136 Fed. Cl. 445, 451 (2018); Dodd v. Sec'y of Health & Human Servs., 114 Fed. Cl. 43, 47 (2013). The arbitrary and capricious standard is "well understood to be the most deferential possible." Munn v. Sec'y of Health & Human Servs., 970 F.2d 863, 870 (Fed. Cir. 1992).

Therefore, this court may set aside a Special Master's decision only if the court determines that the "findings of fact or conclusion of law of the special master . . . [are] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 42 U.S.C. § 300aa-12(e)(2)(B); see also Lombardi v. Sec'y of Health & Human Servs., 656 F.3d at 1350 ("We uphold the special master's findings of fact unless they are arbitrary or capricious.") (internal citations omitted); Moberly ex rel. Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1321 (Fed. Cir. 2010); Markovich v. Sec'y of Health & Human Servs., 477 F.3d at 1356-57; Lampe v. Sec'y of Health & Human Servs., 219 F.3d at 1360. The United States Court of Appeals for the Federal Circuit has indicated that:

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment.  Fact findings are reviewed by us, as by the Claims Court judge, under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard . . . ; and discretionary rulings under the abuse of discretion standard.  The latter will rarely come into play except where the special master excludes evidence.

Munn v. Sec'y of Health & Human Servs., 970 F.2d at 871 n.10; see also Carson ex rel. Carson v. Sec'y of Health & Human Servs., 727 F.3d 1365, 1369 (Fed. Cir. 2013); Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d at 1366; W.C. v. Sec'y of Health & Human Servs., 704 F.3d at 1355; Griglock v. Sec'y of Health & Human Servs., 687 F.3d 1371, 1374 (Fed. Cir. 2012).

Regarding interpretation of the words of the Vaccine Act, this court reviews such questions of law de novo. See R.K. on behalf of A.K. v. Sec'y of Health & Human Servs., 125 Fed. Cl. 276, 280 (2016) (noting that a Special Master's interpretation of the Vaccine Act "is a question of law," which the court reviews "*de novo*" (emphasis in original) (citing Hawkins v. United States, 469 F.3d 993, 1000 (Fed. Cir. 2006) ("Statutory construction is a matter of law that we review *de novo*." (emphasis in original)))); see also Boatmon v. Sec'y of Health & Human Servs., 138 Fed. Cl. 566, 571 (2018) ("As to questions of law, the legal rulings made by a special master in connection with a vaccine claim are reviewed de novo, under a 'not in accordance with the law' standard."); Spahn v. Sec'y of Health &

Human Servs., 138 Fed. Cl. 252, 257 (2018) ("The special master's determinations of law are reviewed *de novo*." (emphasis in original) (citing Andreu ex rel. Andreu v. Sec'y of Health & Human Servs., 569 F.3d 1367, 1373 (Fed. Cir. 2009))).

The issue before the court in the current case is whether Special Master Millman committed legal error when she concluded that Petitioner's medical review panel proceeding in Louisiana was a "civil action for damages" and barred Petitioner's claim before the Office of Special Masters pursuant to Section 11(a)(5)(B) of the Vaccine Act. See Skinner-Smith v. Sec'y of Health & Human Servs., 2018 WL 3991343, at *3. Petitioner argues that her medical review panel proceeding in Louisiana was not a "civil action for damages" within the plain meaning of Section 11(a)(5)(B) of the Vaccine Act. According to Petitioner, a "civil action," as defined in the Federal Rules of Civil Procedure, commences "by filing a complaint with the court," and, thus, a medical review panel proceeding, in which no complaint has been or is ever filed in a court, cannot be considered a civil action. (citing Fed. R. Civ. P. 3). Petitioner also argues that her medical review panel proceeding "was an administrative process and Petitioner never took the next step of filing a civil action in Louisiana." Petitioner further argues that a medical review panel proceeding is not an action "for damages" because a medical review panel "has no right to award any damages."

Respondent acknowledges that Petitioner's February 5, 2013 letter requesting a medical review panel proceeding, which Respondent labels as a "Complaint,"[7] "was not actually filed in a state or federal court," but argues that Special Master Millman correctly concluded that a medical review panel proceeding in Louisiana is a "civil action for damages" covered by Section 11(a)(5)(B) of the Vaccine Act. Respondent reiterates Special Master Millman's conclusion in her June 25, 2018 decision that pursuant to the decision by the Supreme Court of Louisiana in Nathan v. Touro Infirmary, "[f]iling a complaint with the review panel is a mandatory initial step in a malpractice claim and a requirement before filing suit 'in any court.' Therefore, the filing with the panel was equivalent to the filing of a suit and for present purposes was actually the commencement of the suit." (quoting Nathan v. Touro Infirmary, 512 So. 2d at 353-54). According to Respondent, because a medical review panel proceeding is a "mandatory initial step in a malpractice claim" under Louisiana State law, a medical review panel proceeding should be considered a "civil action for damages" pursuant to Section 11(a)(5)(B) of the Vaccine Act. Respondent also argues that "an MRP proceeding can lead to damages, as it is the initial step in a medical malpractice suit."

Section 11(a)(5)(B) of the Vaccine Act states, "[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death." 42 U.S.C. § 300aa-11(a)(5)(B). A "civil action" within Section 11(a)(5)(B) of the Vaccine Act, logically, encompasses civil actions filed in state courts. See, e.g., Aull v. Sec'y of Health & Human

---

[7] The MMA indicates that a medical review panel proceeding is initiated when a claimant files a "request for review of malpractice claim or a malpractice complaint," with the States of Louisiana's Division of Administration. See LA. REV. STAT. ANN. § 40.1231.8(A)(1)(b), (2)(b).

Servs., 462 F.3d 1338, 1344 (Fed. Cir. 2006) (affirming dismissal of petition for compensation pursuant to Section 11(a)(5)(B) of the Vaccine Act when petitioner had a pending civil action in Kentucky State Court when the petition was filed); see also Flowers v. Sec'y of Health & Human Servs., 49 F.3d 1558, 1559 (Fed. Cir. 1995) (affirming dismissal of petition for compensation pursuant to Section 11(a)(5)(B) of the Vaccine Act when petitioner had a pending civil action in Ohio State Court at the time the petition was filed); Weddel v. Sec'y of Health & Human Servs., 23 F.3d 388, 389 (Fed. Cir. 1994) (affirming dismissal of petition for compensation pursuant to Section 11(a)(5)(B) of the Vaccine Act when petitioner had a pending civil action in Texas State Court at the time the petition was filed); Huzenlaub v. Sec'y of Health & Human Servs., 34 Fed. Cl. 691, 695 (1996) (finding that petition for compensation was barred from this court pursuant to Section 11(a)(5)(B) of the Vaccine Act when petitioner had a pending Texas State Court action at the time the petition was filed); Allison v. Sec'y of Health & Human Servs., 23 Cl. Ct. 551, 556 (1991) (affirming Special Master's decision to dismiss petition for compensation when petitioner had a pending civil action before the Nevada Supreme Court on the date she filed her petition). It appears, however, that no court has squarely addressed whether the terms "civil action," as used in Section 11(a)(5)(B) of the Vaccine Act, includes proceedings, such as the medical review panel proceeding in Louisiana, in which no complaint was ever filed in a state or federal court.

In a statutory construction analysis, the first step is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 132 S. Ct. 1670, 1680 (2012) ("We begin 'where all such inquiries must begin: with the language of the statute itself.'" (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989))); Jimenez v. Quarterman, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."); Click-To-Call Techs., LP v. Ingenio, Inc., YellowPages.com, LLC, 899 F.3d 1321, 1329 (Fed. Cir. 2018) ("The first step 'is to determine whether the language at issue has a plain and unambiguous meaning . . . .'" (quoting Barnhart v. Sigmon Coal Co., Inc., 534 U.S. at 450)); Starry Assocs., Inc. v. United States, 892 F.3d 1372, 1377 (Fed. Cir. 2018); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d 629, 644 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011); Strategic Hous. Fin. Corp. of Travis Cnty. v. United States, 608 F.3d 1317, 1323 (Fed. Cir.) ("When interpreting any statute, we look first to the statutory language."), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 562 U.S. 1221 (2011); Mgmt. and Training Corp. v. United States, 115 Fed. Cl. 26, 42 (2014) ("Principles of statutory interpretation dictate that the court begin its analysis with the text of the regulation at issue because, if the terms of the regulation are unambiguous, the plain language of a regulation is controlling."). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. at 341 (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992); McCarthy v. Bronson, 500 U.S. 136, 139 (1991)); see also King v. Burwell, 135 S. Ct. 2480, 2489 (2015) ("[W]hen deciding whether the language is plain, we must read the words 'in their context and with a view

to their place in the overall statutory scheme.'" (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000))). "'Beyond the statute's text, the traditional tools of statutory construction include the statute's structure, canons of statutory construction, and legislative history.'"  Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d 1357, 1361 (Fed. Cir.) (quoting Bull v. United States, 479 F.3d 1365, 1376 (Fed. Cir. 2007)), reh'g en banc denied (Fed. Cir. 2010); see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 132 S. Ct. at 1680 ("[W]e consider each question [of statutory interpretation] in the context of the entire statute." (citing Robinson v. Shell Oil Co., 519 U.S. at 341)); Roberts v. Sea-Land Servs., Inc., 132 S. Ct. 1350, 1356 (2012); Bush v. United States, 655 F.3d 1323, 1329 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 2681 (2012).

The initial inquiry into the statutory text ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" Barnhart v. Sigmon Coal Co., 534 U.S. at 450 (quoting Robinson v. Shell Oil Co., 519 U.S. at 340); see also King v. Burwell, 135 S. Ct. at 2489 ("If the statutory language is plain, we must enforce it according to its terms." (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010)); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d at 644; Arko Foods Int'l, Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011) ("'[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute.'" (quoting Millenium Lumber Distrib., Ltd. v. United States, 558 F.3d 1326, 1328 (Fed. Cir.), reh'g denied (Fed. Cir. 2009)); Am. Airlines, Inc. v. United States, 551 F.3d 1294, 1300 (Fed. Cir. 2008), reh'g granted, 319 F. App'x 914 (Fed. Cir. 2009). Thus, when the "'statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"" Johnson v. United States, 529 U.S. 694, 723 (2000) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))); see also Jimenez v. Quarterman, 555 U.S. at 118; Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)); Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d at 1361 (citing Sharp v. United States, 580 F.3d at 1237); Candle Corp. of Am. v. U.S. Int'l Trade Comm'n, 374 F.3d 1087, 1093 (Fed. Cir.), reh'g and reh'g denied (Fed. Cir. 2004). Indeed, in construing a statute, courts "'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" Schindler Elevator Corp. v. United States, 131 S. Ct. 1885, 1891 (2011) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 (2009) (internal quotation marks omitted)). Even "'[w]hen terms used in a statute are undefined, we give them their ordinary meaning.'" Schindler Elevator Corp. v. United States, 131 S. Ct. at 1891 (quoting Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995)).

In interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute.  See Setser v. United States, 132 S. Ct. 1463, 1470 (2012) ("Our decision today follows the interpretive rule they invoke, that we must 'give effect . . . to every clause and word' of the Act." (omission in original) (quoting United States v. Menasche, 348 U.S. 528, 538–39 (1955))); see also Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) ("It is, moreover, "'a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so

construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or otherwise insignificant.""" (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)))); Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible); Sharp v. United States, 580 F.3d 1234, 1238 (Fed. Cir. 2009). Similarly, the court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous.  See Duncan v. Walker, 533 U.S. at 174 (noting that courts should not treat statutory terms as "surplusage").  "[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective."  Radzanower v. Touche Ross & Co., 426 U.S. 148, 155 (1976); see also Xianli Zhang v. United States, 640 F.3d 1358, 1368 (Fed. Cir.) (citing Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1365 (Fed. Cir. 2005)), reh'g and reh'g en banc denied (Fed. Cir. 2011), cert. denied, 132 S. Ct. 2375 (2012); Hanlin v. United States, 214 F.3d 1319, 1321 (Fed. Cir.), reh'g denied (Fed. Cir. 2000).

The United States Supreme Court also has held that the specific terms of a statute supersede general terms within that statute or within another statute that might otherwise control. See Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228–29 (1957) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling."  (quoting D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 (1932))); see also Bloate v. United States, 559 U.S. 196, 207 (2010); Bulova Watch Co. v. United States, 365 U.S. 753, 761 (1961). In addition, the Supreme Court has endorsed "the 'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning.'" Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995) (quoting Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342 (1994)); see also Kislev Partners, L.P. ex rel. Bahar v. United States, 84 Fed. Cl. 385, 389, recons. denied, 84 Fed. Cl. 378 (2008).

If a statute unequivocal on its face or the meaning of the statute is plain, there is usually no need to resort to the legislative history underlying the statute. See Whitfield v. United States, 543 U.S. 209, 215 ("Because the meaning of [the statute's] text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history . . . ."), reh'g denied sub nom. Hall v. United States, 544 U.S. 913 (2005). But see Chamberlain Grp., Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1196 (Fed. Cir.) ("Though 'we do not resort to legislative history to cloud a statutory text that is clear,' Ratzlaf v. United States, 510 U.S. 135, 147–48 (1994), we nevertheless recognize that 'words are inexact tools at best, and hence it is essential that we place the words of a statute in their proper context by resort to the legislative history.'" (quoting Tidewater Oil Co. v. United States, 409 U.S. 151, 157 (1972))), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 544 U.S. 923 (2005). In limited circumstances, legislative history may be helpful in certain instances "to shed light on what legislators understood an ambiguous statutory text to mean when they voted to enact it into law."  Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1081–82 (2011) (citing Exxon Mobile Corp. v. Allapatah Servs., Inc., 545 U.S. 546, 568 (2005); see also Xianli Zhang v. United States, 640 F.3d at 1373.  Legislative history, however, does not "trump[] clear text."  Bartels Trust for the Benefit of Cornell Univ. ex

rel. Bartels v. United States, 617 F.3d at 1361 (citing Sharp v. United States, 580 F.3d at 1238; Glaxo Operations UK Ltd. v. Quigg, 894 F.2d 392, 396 (Fed. Cir. 1990)). The Supreme Court, however, has noted that when it appears that the plain language of a statute resolves the issue, a court is to "look to the legislative history to determine only whether there is [a] 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987) (citing United States v. James, 478 U.S. 597, 606 (1986), abrogated on other grounds by Cent. Green Co. v. United States, 531 U.S. 425, 436 (2001)); Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).

"When terms are not defined, it is a basic principal of statutory interpretation that they are deemed to have their ordinary meaning. For that meaning, it is appropriate to consult dictionaries." Nielson v. Shinseki, 607 F.3d 802, 805-06 (Fed. Cir. 2010) (internal citations omitted); see also F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994) (referring to Black's Law Dictionary when determining the ordinary meaning of "cognizable," which was not defined in the Federal Tort Claims Act); Hebah v. United States, 197 Ct. Cl. 729, 743, 456 F.2d 696, 704 (1972) ("To establish the common or plain meaning of a word or term, this court has long accepted dictionary definitions."); Bortone v. United States, 110 Fed. Cl. 668, 677–78 (2013) ("It is well-settled that when a statute or regulation does not provide the definition of a term, courts construe the term in accordance with its ordinary or natural meaning. Dictionaries can serve as the basis for determining the plain meaning." (internal citations omitted)); Wash. State Dep't of Servs. for the Blind v. United States, 58 Fed. Cl. 781, 789 (2003) (stating that "[i]n the absence of a statutory or regulatory definition," that the Court of Federal Claims "looks to the dictionary to establish the plain meaning of the term"). In addition, "[i]n construing statutory language, we look to dictionary definitions published at the time that the statute was enacted." Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1243 (Fed. Cir. 2010) (footnote omitted); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 882 (Fed. Cir. 2018) ("It is a fundamental canon of statutory construction that . . . words will be interpreted as taking their ordinary, contemporary, common meaning, which may be derived from [d]ictionaries from the era of [the statutory provision]'s enactment." (internal quotation marks omitted; ellipses and alterations in original)).

Respondent argues that Petitioner's medical review panel proceeding was a "civil action" within Section 11(a)(5)(B) of the Vaccine Act, "even if it was not actually filed in a state or federal court." Respondent notes that the phrase "civil action" within Section 11(a)(5)(B) of the Vaccine Act does not contain the modifier "State or Federal court" as does Section 11(a)(2) of the Vaccine Act (codified at 42 U.S.C. § 300aa-11(a)(2)). According to Respondent, "Congress's choice to omit" the modifier "State of Federal court" from Section 11(a)(5)(B) while including it in Section 11(a)(2) should not be disregarded as "meaningless." Respondent argues that Congress's omission of the modifier "State or Federal court" from Section 11(a)(5)(B) of the Vaccine Act means that Section 11(a)(5)(B)'s "prohibition against a pending civil action is not confined to cases filed in state and federal court."

Section 11(a)(2) of the Vaccine Act states that:

**(2)(A)** No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and—

>  **(i)(I)** the United States Court of Federal Claims has issued a judgment under section 300aa-12 of this title on such petition, and
>  **(II)** such person elects under section 300aa-21(a) of this title to file such an action, or
>  **(ii)** such person elects to withdraw such petition under section 300aa-21(b) of this title or such petition is considered withdrawn under such section.

**(B)** If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action. If a petition is filed under this section with respect to the injury or death for which such civil action was brought, the date such dismissed action was filed shall, for purposes of the limitations of actions prescribed by section 300aa-16 of this title, be considered the date the petition was filed if the petition was filed within one year of the date of the dismissal of the civil action.

42 U.S.C. § 300aa-11(a)(2) (emphasis in original). Section 11(a)(5)(B) of the Vaccine Act, contrastingly, does not include the modifier "State of Federal court," and instead states that, "[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this subsection for such injury or death." Id. at § 300aa-11(a)(5)(B).

As support for its argument, Respondent cites to Sullivan v. McDonald, 815 F.3d 786 (Fed. Cir. 2016), in which the United States Court of Appeals for the Federal Circuit interpreted a regulation regarding veterans' benefits. See id. at 789-91. The facts of Sullivan, however, are distinguishable from the above-captioned case. At issue in Sullivan was whether a United States Department of Veterans Affairs (VA) regulation, which required the VA to assist a veteran in obtaining VA medical records in connection with the veteran's disability compensation claim, imposed a duty on the VA only to obtain "relevant" VA medical records. See id. at 791. The regulation at issue identified four categories of different medical records that the VA would provide assistance in obtaining, which were,

(1) the claimant's service medical records, *if relevant* to the claim; (2) other *relevant* records pertaining to the claimant's active military, naval or air service that are held or maintained by a governmental entity; (3) VA medical records or records of examination or treatment at non-VA facilities authorized by VA; and (4) any other *relevant* records held by any Federal department or agency.

Id. at 790–91 (emphasis in original). As quoted above, category number three, which required the VA to obtain a veteran's VA medical records, was the only category of records which did not reference whether such records needed to be "relevant." See id.

The Sullivan court explained that:

The VA knew how to indicate when it was limiting its duty to assist to obtaining relevant records only, which it did by including the term "relevant" as a modifier for three of the four categories of records identified in § 3.159(c)(3). But with respect to "VA medical records or records of examination or treatment at non-VA facilities authorized by VA," the modifier "relevant" is notably absent.

Sullivan v. McDonald, 815 F.3d at 791. The Sullivan court then concluded that:

Because "we attempt to give full effect to all words contained within that statute or regulation," Glover [v. West], 185 F.3d [1328, 1332 (Fed. Cir. 1999)], meaning should be given to the VA's choice to impose a relevancy standard on the VA's duty to assist in obtaining certain categories of records, as well as its choice to not impose such a standard on VA medical records. We will not read in a relevancy standard where the VA left it out.

Sullivan v. McDonald, 815 F.3d at 791.

Unlike in Sullivan, however, in which the court found that the notable absence of the word "relevant" was indicative of Congressional intent, the absence of the phrase "State or Federal court" from Section 11(a)(5)(B) of the Vaccine Act is neither notable nor helpful to Respondent's argument. In the above-captioned case, the phrase "civil action" appears within seven subsections of Section 11(a) of the Vaccine Act, the section which provides the various requirements for filing petitions for compensation in this court. See 42 U.S.C. § 300aa-11(a). The phrase "civil action," however, is only qualified with the words "State or Federal court" within Section 11(a)(2) of the Vaccine Act. See 42 U.S.C. § 300aa-11(a)(2). For the remaining six Sections, the Vaccine Act only refers to a "civil action." See 42 U.S.C. § 300aa-11(a)(3)-11(a)(8). Thus, contrary to Respondent's position, Section 11(a)(5)(B)'s exclusion of the modifier "State or Federal court" from the phrase "civil action" is not notable nor indicative that, as Respondent argues, Section 11(a)(5)(B)'s "prohibition against a pending civil action is not confined to cases filed in state and federal court."

Respondent also argues that, "if filing in state or federal court is inherent in the meaning of the term civil action, as petitioner argues, the inclusion of 'State or Federal court' in Section 11(a)(2) would be superfluous, rendering such a reading inconsistent with the tenets of statutory interpretation." The inclusion of the words "State or Federal court" in Section 11(a)(2) of the Vaccine Act, however, does not render the plain meaning of a "civil action," which is commonly understood as an action filed in a court of competent jurisdiction, superfluous. Instead, the better reading of Section 11(a)(2) of the Vaccine Act is that the phrase "State or Federal court" clarifies that an individual cannot file a "civil action" either in a state or federal court before filing a petition for compensation in this court. The clarifying phrase "State or Federal court," Section 11(a)(2) of the Vaccine Act is directed at clarifying that a petitioner is prohibited from initiating a federal or a state court action prior to filing a petition for compensation in this court. Thus, contrary to Respondent's position, a "civil action" within the meaning of Section 11(a)(5)(B) of the Vaccine Act remains defined as an action filed in a court of competent jurisdiction.

Respondent also argues that Petitioner's medical review panel proceeding is a "civil action for damages" pursuant to Section 11(a)(5)(B) of the Vaccine Act because, under Louisiana State law, legal interest on the judgment entered in a civil malpractice lawsuit before a court of competent jurisdiction accrues from the date the request for review is filed in a medical review panel proceeding. The date that legal interest accrues in a medical malpractice suit before a court of competent jurisdiction in Louisiana, however, is not dispositive. A medical malpractice claim filed in a court of competent jurisdiction is an optional, and independent, proceeding from a pre-trial screening before a medical review panel. As previously noted, a claimant in Louisiana may file, if he or she so chooses, a medical malpractice lawsuit in a court of competent jurisdiction only after the completion of a medical review panel proceeding. In addition, a Louisiana claimant is not required to file suit following the completion of his or her medical review panel proceeding. In fact, the MMA in Louisiana requires a claimant to participate in a pre-screening medical review panel proceeding before filing suit, is designed such that claimants, hopefully, will resolve claims during the medical review panel proceeding and, thus, will not have to file suit in a court of law. As the Supreme Court of Louisiana explained in McGlothlin v. Christus St. Patrick Hospital, a pre-trial screening before a medical review panel is

> designed to weed out frivolous claims without the delay or expense of a court trial. It is thought that the use of such panels will encourage settlement because both parties will be given a preliminary view of the merits of the case. If a claim is found by the panel to be without merit it is thought that the claimant will be likely to abandon his claim or agree to a nominal settlement. Moreover, a plaintiff who gains a favorable opinion from the panel may be able to negotiate a favorable settlement with his defendants, a procedure which also avoids much of the time and expense of a trial.

McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1226 (quoting Everett v. Goldman, 359 So. 2d at 1264); see also Perritt v. Dona, 849 So. 2d 56, 61; Rhodes v. Schultis, 140 So. 3d at 336 ("The Louisiana Medical Malpractice Act requires that all medical malpractice claims against qualified health care providers are to be submitted to a medical

review panel prior to filing suit in any court. The purpose of pre-trial screening through a medical review panel is to weed out frivolous claims without the delay or expense of a court trial." (internal citations omitted)); Ward v. Vivian Healthcare and Rehab. Ctr., 116 So. 3d at 874 ("[A] claim first be submitted to a medical review panel before the malpractice action may commence in court. The medical review panel is a filtering process that is meant to weed out frivolous claims or prompt defendants to settle valid claims reasonably." (internal citations omitted)). Because the filing of suit following a medical review panel proceeding is completely optional, and is independent from a medical review panel proceeding, the date from which legal interest would accrue on a judgment entered in a medical malpractice suit following a medical review panel does not support Respondent's position that a pre-screening medical review panel proceeding in Louisiana should be considered a "civil action for damages" pursuant to Section 11(a)(5)(B) of the Vaccine Act.

Respondent then argues that Petitioner's medical review panel proceeding was a "civil action for damages" pursuant to Section 11(a)(5)(B) of the Vaccine Act because "State Court authority was exercised to first extend the duration of petitioner's Malpractice Claim and then to dismiss that claim." Although the 24th Judicial District Court for the Parish of Jefferson, Louisiana issued two procedural orders relevant to Petitioner's medical review panel proceeding, such actions did not transform Petitioner's medical review panel proceeding into a civil court action in a court of competent jurisdiction. On September 22, 2014, the 24th Judicial District Court for the Parish of Jefferson, Louisiana issued an Order granting an extension of time for the medical review panel to issue its expert opinion. Then, on June 18, 2015, the 24th Judicial District Court for the Parish of Jefferson, Louisiana issued an Order dismissing Petitioner's medical review panel proceeding for failure to comply with an Order to Compel. Pursuant to Louisiana State law, the parties are allowed limited, specialized access to a local Louisiana State Court to decide procedural and time limitation issues during a medical review panel proceeding, such as granting time extensions or ordering the parties to comply with certain medical review panel procedural orders. See LA. REV. STAT. ANN. § 40:1231.8(B)(1)(b), (C)(6). The court, however, during the life of a medical panel review proceeding, has no authority to rule on whether the defending party failed to comply with the applicable standard of care or to award damages. The medical review panel is the only body which rules on the merits of a claimant's claim for medical malpractice during the life of a medical review panel proceeding, and even then, the medical review panel has limited, expert opinion authority. The medical review panel's "sole duty" is to issue an expert opinion "as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care." Id. at § 40:1231.8(G). Moreover, the expert opinion itself is not binding on any future civil court proceedings. See id. at § 40:1231.8(H). The claimant's next step, if he or she so chooses, is to file an action in a court of competent jurisdiction, but only if the individual has participated in the medical review panel process can the individual claimant file a civil action in a Louisiana State Court or in any Federal District Court which has diversity jurisdiction over a medical malpractice claim under Louisiana State law.

For Petitioner's medical review panel proceeding to bar a petition for vaccine compensation in this court pursuant to Section 11(a)(5)(B) of the Vaccine Act, Petitioner's previous proceeding must have been both a (1) a "civil action, (2) "for damages." See 42 U.S.C. § 300aa-11(a)(5)(B) (noting that a petitioner is barred from filing a petition in this court if the petitioner has "pending a civil action for damages for a vaccine-related injury or death" (emphasis added)). Based on the plain language of this statutory provision, Petitioner's medical review panel proceeding does not qualify as one for either a "civil action" or an action "for damages." In the first place, the term "civil action" generally refers to an action in a civil case filed in a state or federal court of competent jurisdiction. Although the phrase "civil action" within Section 11(a)(5)(B) of the Vaccine Act is undefined in the Vaccine Act, as previously noted, it is a "fundamental canon of statutory construction" that words "will be interpreted as taking their ordinary, contemporary common meaning, which may be derived from [d]ictionaries from the era of [the statutory provision]'s enactment." N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 882 (internal quotation marks omitted; alterations in original). Based on dictionaries in use around the time the Vaccine Act was enacted, the plain meaning of the phrase "civil action" is an action filed in a court of competent jurisdiction. See A Dictionary of Modern Legal Use 20 (2d ed. 1995) (defining "action" as a "mode of proceeding in court to enforce a private right, to redress or prevent a private wrong, or to punish a public offense"); see also Black's Law Dictionary 245, 28 (6th ed. 1990) (defining "Civil action" as an "[a]ction brought to enforce, redress, or protect private rights," and "Action" as a "lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law."); Webster's New Collegiate Dictionary 12, 202 (1981) (defining "action" as "a proceeding in a court of justice by which one demands or enforces one's right," and "civil" as "relating to private rights and to remedies sought by action or suit distinct from criminal proceedings").[8]

---

[8] The legislative history of Section 11(a)(5)(B) of the Vaccine Act is consistent with the position that the plain and unambiguous meaning of a "civil action" is an action filed in a court of competent jurisdiction. As the Federal Circuit explained in Flowers v. Secretary of Health & Human Services,

> [a]s originally enacted, [Section 11(a)(5)] the Vaccine Act stated in pertinent part that:
>
> . . . .
>
> > (B) If a plaintiff who on the effective date of this subtitle had pending a civil action for damages for a vaccine-related injury or death does not withdraw the action under subparagraph (A), such person may not file a petition under subsection (b) for such injury or death.

Flowers v. Sec'y of Health & Human Servs., 49 F.3d at 1560 (emphasis in original). In 1989, Congress amended Section 11(a)(5)(B) to delete the underscored portion quoted above. See id.; see also Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101–239, § 6601(c)(3)(B), 103 Stat. 2106, 2285. Congress explained in a House of Representatives Report, dated September 20, 1989, that the 1989 amendment to Section 11(a)(5)(B) provided "technical clarification of the ability of a petitioner with a civil court

Based on the record before the court, Petitioner's medical review panel proceeding in Louisiana was not a civil action initiated in a court of competent jurisdiction. As required by the MMA, before a claimant can file a medical malpractice claim in a court of competent jurisdiction in Louisiana, a claimant is required to participate in a medical review panel proceeding, which is a "[p]retrial screening" before a panel of medical experts, not a court of competent jurisdiction. See McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1226 (noting that a medical review panel proceeding is a "[p]retrial screening" that is "designed to weed out frivolous claims without the delay or expense of a court trial"); see also Perritt v. Dona, 849 So. 2d at 61 ("The MMA requires that all claims against health care providers be reviewed or 'filtered' through a medical review panel before proceeding to any other court."); Rhodes v. Schultis, 140 So. 3d at 336 ("The Louisiana Medical Malpractice Act requires that all medical malpractice claims against qualified health care providers are to be submitted to a medical review panel prior to filing suit in any court. The purpose of pre-trial screening through a medical review panel is to weed out frivolous claims without the delay or expense of a court trial." (internal citations omitted)); Ward v. Vivian Healthcare and Rehab. Ctr., 116 So. 3d at 874 ("[A] claim first be submitted to a medical review panel before the malpractice action may commence in court. The medical review panel is a filtering process that is meant to weed out frivolous claims or prompt defendants to settle valid claims reasonably." (internal citations omitted)).

As described above, on February 5, 2013, Petitioner commenced her required pre-trial, medical review panel proceeding by submitting a letter to the State of Louisiana's Division of Administration, a Louisiana State executive agency, requesting that a medical review panel proceeding be commenced. The State of Louisiana's Division of Administration forwarded her request to the PCF Oversight Board, a nine-member board organized within the State of Louisiana's executive branch Division of Administration. As previously noted, the PCF Oversight Board plays a ministerial role in the medical review panel proceeding, and oversees the various filings made by the parties to the proceedings. See Franks v. La. Patient's Compensation Fund Oversight Bd., 220 So. 3d at 868; see also Berthelot v. Patients' Compensation Fund Oversight Bd., 977 So. 2d at 973. The merits of Petitioner's medical malpractice claim were to be reviewed by a four-member medical review panel, which is not a judge or jury but "merely a body of experts assembled to evaluate a medical claim and to provide an expert opinion." Jeansonne v. Bonano, 241 So. 3d at 1031. Further, unlike a court of competent jurisdiction, the medical review panel's authority is singularly limited to issuing a medical expert opinion as to "whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care." LA. REV. STAT. ANN. § 40:1231.8(G). See McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1229 ("[T]he

_____

action pending to enter the compensation system." H.R. Rep. No. 247, 101st Cong., 1st Sess. 511 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 2237 (emphasis added). Instead of simply referring to a "civil action" in the September 20, 1989 House Report when referring to Section 11(a)(5)(B) of the Vaccine Act, Congress, in the September 20, 1989 House Report, referred to a "civil court action," suggesting that Congress understood that a "civil action" within Section 11(a)(5)(B) of the Vaccine Act referred to a proceeding filed in a court of competent jurisdiction. See id.

panel's sole duty under our medical malpractice scheme is to express its expert opinion as to whether or not the evidence supports the conclusion the defendant or defendants acted or failed to act within the appropriate standard of care." (internal quotation marks omitted)). In addition, the medical review panel's expert opinion is non-binding in a future court proceeding. See LA. REV. STAT. ANN. § 40:1231.8(H). If a claimant decides to initiate an action in a court of competent jurisdiction following the completion of a medical review panel, the medical review panel's expert opinion may be introduced at trial as expert testimony, and may be rejected or accepted by the trial court. See McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1227 ("The opinion, therefore, can be used by either the patient or the qualified health care provider, and the jury, as trier of fact, is free to accept or reject any portion or all of the opinion."); see also Matranga v. Parish Anesthesia of Jefferson, LLC, 170 So. 3d at 1091 ("[A]s with any other expert testimony, the Medical Review Panel Opinion is subject to review and a trial court may reject it as inadmissible." (citing McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1227)); Rhodes v. Schultis, 140 So. 3d at 337 ("[N]othing in the Medical Malpractice Act prevents Plaintiffs from presenting evidence, including expert medical testimony, at trial that contradicts the panel's opinion."). Notably, before the medical review panel could issue its expert opinion in Petitioner's medical review panel proceeding, the medical review panel was dissolved, and the medical review panel proceeding was dismissed. Thus, no expert opinion was ever issued in Petitioner's medical review panel proceeding. For these reasons, Petitioner's pre-trial screening proceeding before a medical review panel does not qualify as a "civil action" which would prohibit Petitioner from filing a petition for compensation in this court pursuant to Section 11(a)(5)(B) of the Vaccine Act.

In addition, the only two decisions, albeit both unpublished and issued long ago, by Special Masters in this court to have addressed whether a "civil action," as used within the Vaccine Act, include pre-trial proceedings, concluded that pre-trial proceedings were not included within the plain meaning of a "civil action." In Polanco v. Secretary of Health & Human Services, No. 91-195V, 1997 WL 618256, at *4 (Fed. Cl. Spec. Mstr. Sept. 11, 1997) and in Taylor v. Secretary of Health & Human Services, No. 90–1036V, 1995 WL 729519, at *4 (Fed. Cl. Spec. Mstr. Mar. 27, 1995), the Special Masters addressed whether either proceeding should be considered a "civil action" pursuant to Section 11(a)(6) of the Vaccine Act, which prohibits an individual from filing a petition in this court if "a person brings a civil action after November 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1998." 40 U.S.C. § 300aa-11(a)(6). Because Section 11(a)(6) and Section 11(a)(5)(B) of the Vaccine Act both refer to a "civil action" "for damages," the Special Masters' decisions in Polanco and Taylor as to what constitutes a "civil action" are instructive. Both Special Masters found that the prior proceedings at issue in their particular cases, which, under applicable state law, were condition precedents to filing a civil malpractice action in court, were not to be considered a "civil action" within the meaning of Section 11(a)(6). See Polanco v. Sec'y of Health & Human Servs., 1997 WL 618256, at *4 (finding that the filing of a "notice of claim" in the Supreme Court of New York was not the commencement or bringing of a civil action pursuant to Section 11(a)(6) because, according to New York State law, the filing of a notice of claim is a "condition precedent to the commencement of an action against a governmental entity"); see also Taylor v. Sec'y of Health & Human

Servs., 1995 WL 729519, at *4 (finding that the filing of an action before an arbitration board was not the commencement of a civil action pursuant to Section 11(a)(6) because, according to Maryland State law, the arbitration board proceeding was a mere screening process and a statutory precondition to filing a medical malpractice action). In Mrs. Skinner-Smith's case, Petitioner's medical review panel proceeding, like the proceedings at issue in Polanco and Taylor, is, pursuant to Louisiana State law, a condition precedent to filing a medical malpractice claim in Louisiana State Court. See McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1226; see also Perritt v. Dona, 849 So. 2d at 61. The court finds that Petitioner's medical review panel proceeding does not qualify as a "civil action," pursuant to Section 11(a)(5)(B) of the Vaccine Act.

Petitioner's Louisiana medical review panel proceeding also was not an action "for damages" within Section 11(a)(5)(B) of the Vaccine Act. As previously noted, pursuant to Section 11(a)(5)(B) of the Vaccine Act, a petitioner is barred from filing a petition in this court if the petitioner has "pending a civil action for damages for a vaccine-related injury or death." 42 U.S.C. § 300aa-11(a)(5)(B) (emphasis added). Oddly enough, although Special Master Millman noted that a medical review panel "does not directly award damages," she nonetheless concluded, without citing any legal authority, that Petitioner's medical review panel proceeding was an action "for damages" pursuant to Section 11(a)(5)(B) of the Vaccine Act because such proceeding "can lead to damages." Skinner-Smith v. Sec'y of Health & Human Servs., 2018 WL 3991343, at *4. Special Master Millman's unsupported conclusion ignores the plain direction of the statute. The plain meaning of the word "for," as defined by dictionaries contemporaneous to the passage of the Vaccine Act is to indicate "purpose." See A Dictionary of Modern Legal Use 78 (defining "For" as a "general-purpose causal" conjunction); see also Black's Law Dictionary 644 (defining "For" as connoting "the end with reference to which anything is, acts, serves, or is done. In consideration of which, in view of which, or with reference to which, anything is done or takes place"); Webster's New Collegiate Dictionary 444 (defining "for" as a "function word to indicate purpose"). In the phrase at issue, a "civil action for damages," the word "for" indicates that the purpose of the civil action should be to obtain damages in order to bar an action in this court. Based on Louisiana State law, a medical review panel has no authority to award damages and a damage award is not available from a medical review panel proceeding. See LA. REV. STAT. ANN. § 40:1231.8(G); see also Perritt v. Dona, 849 So. 2d at 62 ("No findings are made by the panel as to damages." (quoting Everett v. Goldman, 359 So. 2d at 1263)). A medical review panel proceeding is a preliminary, required step to filing a lawsuit and the panel's "sole" duty is to issue an expert opinion on the moving party's medical malpractice claim. See LA. REV. STAT. ANN. § 40:1231.8(G). If a claimant seeks an opportunity to recover damages, the claimant has the option to file a civil lawsuit following the conclusion of a medical panel review proceeding. See id. at § 40:1231.8(B)(1)(a)(i). Additionally, while the medical review panel's expert opinion may be admissible in a future civil action, it is not "conclusive," and has no dispositive effect on whether a claimant may succeed in a future civil action. See id. at § 40:1231.8(H). Moreover, the expert opinion is not binding even in a Louisiana State Court action. The court, therefore, concludes that Petitioner's medical review panel proceeding does not qualify as an action "for damages" which would

prohibit Petitioner from filing a petition for compensation in this court pursuant to Section 11(a)(5)(B) of the Vaccine Act.

As indicated above, Special Master Millman concluded, without citing any relevant legal authority and without any statutory analysis of Section 11(a)(5)(B) of the Vaccine Act, that Petitioner's medical review panel proceeding was a "civil action for damages" pursuant to Section 11(a)(5)(B). See Skinner-Smith v. Sec'y of Health & Human Servs., 2018 WL 3991343, at *3. Special Master Millman cited to the Supreme Court of Louisiana case, Nathan v. Touro Infirmary, to support her conclusion that Petitioner's medical review panel proceeding was the equivalent of a "civil action" pursuant to Section 11(a)(5)(B) of the Vaccine Act. See Skinner-Smith v. Sec'y of Health & Human Servs., 2018 WL 3991343, at *3. It is not clear why Special Master Millman considered herself bound by a Supreme Court of Louisiana decision. This court is bound by precedent from the United States Supreme Court, the United States Court of Appeals for the Federal Circuit, and its predecessor, the United States Court of Claims. See Dellew Corp. v. United States, 855 F.3d 1375, 1382 (Fed. Cir. 2017) (noting that "the Court of Federal Claims must follow relevant decisions of the Supreme Court and the Federal Circuit"); see also Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims.").

Special Master Millman relied entirely on the non-binding Nathan decision for the proposition that the filing of a medical review panel proceeding in the State of Louisiana is the equivalent to commencing a civil action. See Skinner-Smith v. Sec'y of Health & Human Servs., 2018 WL 3991343, at *3. Nathan, however, in addition to being non-binding, is unpersuasive and distinguishable from the above-captioned case. In Nathan, Max Nathan, Jr., the executor for Herbert Nathan, was seeking to prosecute a medical malpractice claim in Louisiana State court. See Nathan v. Touro Infirmary, 512 So. 2d at 353. Prior to Herbert Nathan's death in 1985, the case went through a medical review panel proceeding in Louisiana. See id. at 352. Herbert Nathan, however, passed away before filing a medical malpractice claim in Louisiana State Court. See id. The Nathan court was tasked with determining whether the medical malpractice proceeding under Louisiana State law had commenced a lawsuit, and then, assuming that it did, to determine whether the lawsuit was a property right that Max Nathan Jr. could inherit and prosecute. See id. The Nathan court concluded that pursuant to Louisiana State law, Herbert Nathan had commenced a lawsuit by initiating a medical review panel proceeding, stating that,

> [f]iling a complaint with the review panel is a mandatory initial step in a malpractice claim and a requirement before filing suit "in any court." Therefore, the filing with the panel was equivalent to the filing of a suit and for present purposes was actually the commencement of the suit.

Id. at 354 (emphasis added). The Nathan court did state that a medical review panel proceeding was the "equivalent to the filing of a suit" because "the filing of the request for a review of a claim suspended the running of prescription." Id. (citing LA. REV. STAT. ANN.

§ 40:1299.47 (A)(2)(a), currently codified at LA. REV. STAT. ANN. § 40:1231.8(A)(2)(a) (noting that the filing of a request for review of a claim by a medical review panel suspends the "running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review")). The Nathan court, however, stated that an individual must participate in a medical review panel "before filing suit 'in any court.'" Id. (emphasis added). The estate issues in Nathan also are distinct from the issues raised in the case currently before this court and the statute of limitations issue appears to have been a critical issue in the Nathan decision.  Further, since issuing Nathan, the Supreme Court of Louisiana has explained in various opinions that a medical review panel proceeding is a "[p]retrial" screening process that must occur before a claimant can file his or her medical malpractice claim in court. See McGlothlin v. Christus St. Patrick Hosp., 65 So. 3d at 1226 (noting that a medical review panel proceeding is a "[p]retrial screening" that is "designed to weed out frivolous claims without delay or expense of a court trial"); see also Perritt v. Dona, 849 So. 2d at 61 ("The MMA requires that all claims against health care providers be reviewed or 'filtered' through a medical review panel before proceeding to any other court."). Special Master Millman's reliance on Nathan was misplaced.

In sum, the medical review panel proceeding commenced by Mrs. Skinner-Smith in Louisiana on February 5, 2013 was not the initiation of a "civil action for damages" pursuant to Section 11(a)(5)(B) of the Vaccine Act because it was not a proceeding in a court of competent jurisdiction.[9] There is nothing in the record to suggest that Petitioner

---

[9] Both parties agree that Louisiana is not the only state which requires an individual to file first some form of a medical review type panel proceeding before initiating a court action. See WYO. STAT. ANN. § 9-2-1518 (2018) ("Unless submission to the panel is waived in accordance with W.S. 9-2-1519(a), no complaint alleging malpractice shall be filed in any court against a health care provider before a claim is made to the panel and its decision is rendered."); see also NEB. REV. STAT. § 44-2840 (2018) ("No action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel."); MONT. CODE ANN. R. § 27-6-301 (2018) ("Claimants shall submit a case for the consideration of the panel prior to filing a complaint in any district court."); ME. REV. STAT. tit. 24, § 2851 (2018) ("The purpose of mandatory prelitigation screening and mediation panels is: **A.** To identify claims of professional negligence which merit compensation and to encourage early resolution of those claims prior to commencement of a lawsuit; and **B.** To identify claims of professional negligence and to encourage early withdrawal or dismissal of nonmeritorious claims." (emphasis in original)). Other states allow a medical review panel or mediation process to begin after the filing of a court action. See, e.g., VA. CODE ANN. § 8.01-581.2 (2018) ("At any time within thirty days from the filing of the responsive pleading in any action brought for malpractice against a health care provider, the plaintiff or defendant may request a review by a medical malpractice review panel established as provided in § 8.01-581.3."); see also D.C. CODE § 16-2821 (2018) ("After an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree with only limited discovery . . . prior to any further litigation in an effort to reach a settlement agreement.").

filed a complaint that commenced an actual lawsuit in a court of competent jurisdiction. Under Louisiana State law, Petitioner's initiating document for her medical review panel proceeding was a letter request sent to the State of Louisiana's Division of Administration, a state executive agency, requesting that a medical review panel be initiated. See LA. REV. STAT. ANN. § 40:1231.8(A)(2)(b). In addition, before Petitioner could possibly file a medical malpractice claim in a court of competent jurisdiction in Louisiana, the MMA requires that Petitioner first participate in a pre-screening medical review panel proceeding. See id. at § 40:1231.8(B)(1)(a)(i). Petitioner's medical malpractice claim and supporting evidence was to be presented before a panel of three medical professionals and one attorney chairman, none of whom could act as a judge or jury, but were "merely a body of experts assembled to evaluate a medical claim and to provide an expert opinion." Jeansonne v. Bonano, 241 So. 3d at 1031. Moreover, Petitioner's medical review panel proceeding was dismissed before the medical review panel could issue its non-binding, expert opinion. In addition, Petitioner's medical review panel proceeding also was not a "civil action for damages" because damages were not an available remedy in Petitioner's Louisiana medical review panel proceeding. See LA. REV. STAT. ANN. § 40:1231.8(G); see also Perritt v. Dona, 849 So. 2d at 62 ("No findings are made by the panel as to damages." (quoting Everett v. Goldman, 359 So. 2d at 1263)). The court finds that Petitioner's initiated, pre-screening, medical review panel proceeding was not a "civil action for damages" within Section 11(a)(5)(B) of the Vaccine Act, which would bar Petitioner's action before the Special Master. Petitioner's case is remanded to the Special Master for further proceedings on the merits of Petitioner's claim.

## CONCLUSION

Upon review of the record before the court, Special Master Millman's June 25, 2018 decision to dismiss the petition in the above-captioned case was legal error. Therefore, Petitioner's motion for review is hereby **GRANTED**, and the above-captioned case is remanded for further proceedings before Special Master Millman, with instructions to reinstate Petitioner's petition.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**

---

Because the timing of medical review panel or mediation proceedings vary by state, this court's opinion narrowly addresses the applicability of Section 11(a)(5)(B) of the Vaccine Act to Petitioner's medical review panel proceeding in Louisiana and Louisiana State law.