# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 14-1212V
Filed: June 9, 2022
UNPUBLISHED

|  |  |
|---|---|
| ALICIA SKINNER-SMITH,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Special Master Horner<br><br>Interim Attorneys' Fees and Costs |

*Richard Gage, Richard Gage, P.C., Cheyenne, WY,* for petitioner.
*Terrence Kevin Mangan, Jr., U.S. Department of Justice, Washington, DC,* for respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On December 8, 2021, petitioner moved for an award of interim attorneys' fees and costs. (ECF No. 154.) On December 9, 2021, respondent filed a response deferring to the special master regarding the amount and appropriateness of an award of interim fees and costs. (ECF No. 155.) Petitioner requests $99,120.63 to be paid for attorney and paralegal fees with an additional $31,152.56 to be paid for other costs for a total of $130,273.19. For the reasons discussed below, I award petitioner $114,308.39 in interim attorneys' fees and costs.

### I.   Procedural History

Petitioner filed her petition for compensation on December 17, 2014, alleging that she suffered "abscess, pain, and related injuries" caused by her February 6, 2012 Tetanus-Diphtheria-Pertussis ("Tdap") vaccination. (ECF No. 1.) This case was

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

1

originally assigned to the Court's Special Processing Unit ("SPU"). (ECF No. 3.) However, it has subsequently had a protracted history.

Within the SPU, a factual dispute arose regarding the injection site of petitioner's February 6, 2012 Tdap vaccination. After a year and a half of litigation, Chief Special Master Dorsey issued a "Ruling on Facts" on April 26, 2016, that addressed the parties' dispute regarding the injection location. She concluded that petitioner received her vaccination in her left dorsal gluteal muscle, consistent with petitioner's allegation. (ECF No. 45; *see also Skinner-Smith v. Sec'y of Health & Human Servs.,* No. 14-1212V, 2016 WL 3180635 (Fed. Cl. Spec. Mstr. Apr. 27, 2016).)

Following the filing of respondent's report, the case was reassigned out of the SPU and to Special Master Millman. (ECF No. 50.) Special Master Millman issued an Order to Show Cause why the case should not be dismissed on the basis that Exhibit 14 showed petitioner to have had a pending medical malpractice suit pending at the time she filed this petition. (ECF No. 75.) Following motion practice on the issue, Special Master Millman issued a decision dismissing this case on June 25, 2018. (ECF No. 89; *see also Skinner-Smith v. Sec'y of Health & Human Servs.*, No. 14-1212V, 2018 WL 3991343 (Fed. Cl. Spec. Mstr. June 25, 2018*), review granted, decision rev'd,* 141 Fed. Cl. 348 (2018).)

Petitioner then pursued a successful motion for review of that dismissal decision. On December 18, 2018, the Court of Federal Claims (Judge Blank Horn) issued an Opinion and Order granting petitioner's motion for review and remanding the case for further proceedings before the special master with instructions to reinstate the petition. (ECF No. 103; *see also Skinner-Smith v. Sec'y of Health & Human Servs.,* 141 Fed. Cl. 348 (2018).)

This case was reassigned to my docket on June 5, 2019. (ECF No. 109.) Subsequently, the parties exchanged expert reports and I held a two-day entitlement hearing beginning on May 20, 2021. (ECF Nos. 148-49.) Petitioner filed the instant motion on December 8, 2021. (ECF No. 154.) Respondent filed a response on December 9, 2021. (ECF No. 155.) Petitioner filed no reply.

## II.   Awards of Interim Attorneys' Fees and Costs

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs." 42 U.S.C. § 300aa–15(e)(1)(A)–(B). Petitioners are eligible for an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

Additionally, the Federal Circuit has concluded that interim fee awards are permissible and appropriate under the Vaccine Act. *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352. In *Avera*, the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings

are protracted and costly experts must be retained." 515 F.3d at 1352.  In *Shaw*, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375; *see also Chinea v. Sec'y of Health & Human Servs.*, No. 15-95V, 2019 WL 3206829 at *2 (Fed. Cl. Spec. Mstr. June 11, 2019) (citing *Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017)) (observing three factors that have been considered when exercising discretion to award interim attorney's fees: (1) whether the fee request exceeds $30,000, (2) whether the expert costs exceed $15,000, and (3) whether the case has been pending for over 18 months.)

In light of the above, I exercise my discretion to allow an award of interim fees and costs.  This petition was filed nearly five years ago.  In that time, petitioner has incurred significant costs relative to securing medical records and expert support for his claim.  Moreover, respondent has not objected, but instead deferred to my discretion as to whether the standard for an interim award of fees and costs is met in this case.

### III.     Amount of Reasonable Fees and Costs

The determination of the amount of reasonable attorneys' fees is within the special master's discretion.  *See, e.g. Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993).  Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991).  Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam).  However, petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award. *Id*. at 484.  Notwithstanding that respondent has not raised any specific objections to petitioner's fee application, "the Special Master has an independent responsibility to satisfy himself that the fee award is appropriate and [is] not limited to endorsing or rejecting respondent's critique." *Duncan v. Sec'y of Health & Human Servs.*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008); *see also McIntosh v. Sec'y of Health & Human Servs.*, 139 Fed Cl. 238, 250 (2018) (finding that the special master "abused his discretion by failing to independently review the petitioner's counsel's motion for attorneys' fees and reimbursement of case costs to determine if the requested fees and costs were reasonable.").  Furthermore, "the Special Master [has] no additional obligation to warn petitioners that he might go beyond the particularized list of respondent's challenges." *Duncan,* 2008 WL 4743493.

Special Masters use the lodestar approach to determine what constitutes reasonable attorneys' fees under the Vaccine Act.  *Avera,* 515 F.3d at 1347.  The lodestar approach involves first determining "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* at 1347–48 *(*quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Once a court makes that initial calculation, it may then make an

upward or downward departure to the fee award based on other specific findings.  *Id*.  For attorneys receiving forum rates, the decision in *McCulloch v. Secretary of Health & Human Services* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney.  No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has since updated the *McCulloch* rates to adjust for inflation and the Attorneys' Forum Hourly Rate Fee Schedules for successive years can be accessed online.[2]

      I have reviewed the billing records submitted by petitioner's counsel.  With the exception of attorneys Donald Gerstein and Kristen Rieman, the requested rates are reasonable and consistent with those awarded to Mr. Gage and Ms. Blume in prior cases.  *See, e.g., Ferguson v. Sec'y of Health & Human Servs.*, No. 17-1737V, 2022 WL 1467655 (Fed. Cl. Spec. Mstr. Apr. 12, 2022); *Yalacki v. Sec'y of Health & Human Servs.*, No. 14-278V, 2020 WL 5049394 (Fed. Cl. Spec. Mstr. Aug. 12, 2020); *Kirby v. Sec'y of Health & Human Servs.*, No. 16-185V, 2020 WL 5757642 (Fed. Cl. Spec. Mstr. Sep. 1, 2020).  In Donald Gerstein's case, petitioner has requested a rate of $285 per hour for work performed in 2014.  (ECF No. 154, p. 58.)  However, Mr. Gerstein has historically only been awarded a 2014 rate of $250 per hour.  *See, e.g., Boman v. Sec'y of Health & Human Servs.*, No. 15-256V, 2017 WL 7362539 (Fed. Cl. Spec. Mstr. Sep. 20, 2017); *Henderson v. Sec'y of Health & Human Servs.*, No. 14-1082V, 2017 WL 2628170 (Fed. Cl. Spec. Mstr. May 25, 2017).  Additionally, petitioner requests a rate of $251 per hour for work completed by Kristen Rieman in 2017.  (ECF No. 154, p. 56.)  However, Ms. Rieman has historically been awarded $150 per hour for work performed in 2017 primarily due to the Gage firm's failure to include any evidence of Ms. Rieman's experience or any explanation on the reasonableness of the requested rates.  *See, e.g., Demitor v. Sec'y of Health & Human Servs.,* 2020 WL 1027955 (Fed. Cl. Spec. Mstr. Feb. 7, 2020); *Briggs v. Sec'y of Health & Human Servs.*, No. 15-737V, 2018 WL 3991261 (Fed. Cl. Spec. Mstr. June 27, 2018).  Consequently, based on prior rates awarded to both Mr. Gerstein and Ms. Rieman, along with petitioner's failure to include any discussion as to the reasonableness of these requested rates, I find it appropriate to reduce Mr. Gerstein's 2014 rate to $250 per hour, and Ms. Rieman's 2017 rate to $150 per hour.  This results in **a total reduction of $428**.

      Although the hours requested by petitioner appear to be generally reasonable, there are several examples of excessive or duplicative billing.  First, Mr. Gage has billed for internal communications 88 different times, including entries for conferences and correspondence with paralegals and fellow Gage P.C. attorneys, and office meetings.  (*See* ECF No. 154, pp. 8–34.)  Specifically, Mr. Gage billed 3.1 hours during 2014, 2.8 during 2015, 0.7 during 2016, 10.5 in 2017, 3.6 in 2018, 1.6 in 2019, 0.7 in 2020, and 0.3 in 2021 for internal communications.  Historically, Special Masters have denied requests for fees related to internal communications between attorneys and paralegals

---

[2] Each of the Fee Schedules for 2015 through 2022 can be accessed at http://www.cofc.uscourts.gov/node/2914.  The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323.  The schedules are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

4

at the same firm.  Further, the Gage firm has been repeatedly warned against billing for interoffice communications.  See *Taylor v. Sec'y of Health & Human Servs.*, No. 15-1346V, 2019 WL 1376039 (Fed. Cl. Spec. Mstr. Mar. 1, 2019); *Mack v. Sec'y of Health & Human Servs.*, No. 15-149V, 2017 WL 5108680 (Fed. Cl. Spec. Mstr. Sep. 28, 2017).  As such, I find that these entries should be excluded from the final award of attorney's fees and costs for **a total reduction of $7,393.58.**

Additionally, petitioner's records contain several instances of duplicative billing.  Specifically, on January 17, 2019, two paralegals and one attorney billed 0.3 hours each for "review[ing] case status".  (ECF No. 154, p. 25.)  On December 20, 2019, paralegal SM billed 0.3 hours for reviewing respondent's expert report, while paralegal BV billed 0.4 on January 3, 2020 for the same thing.  (ECF No. 154, p. 29.)  On February 21, 2020 SM billed 0.1 and BV billed 0.2 hours for reviewing a scheduling order and calendaring deadlines.  (*Id.*)  Finally, on March 10, 2021, two paralegals and one attorney each billed 0.1 hours for reviewing the case status.  (*Id.* at 30.)  Historically, in cases of duplicative billing special masters have allowed the higher rate billed and excluded the lower rate.  Applying those same principles to the current case results in **a total reduction of $144**.

Additionally, Mr. Gage billed 138.1 hours over 12 entries of "trial prep" occurring between April 26, 2021 and May 21, 2021.  (ECF No. 154, pp. 31–33.)  I find that these hours are excessive and reduce them for the following reasons.  First, the time billed for "trial prep" excludes any work done preparing briefs or other substantive documents filed with the Court.  It would be easier to find these hours reasonable if they also included time spent drafting work product, but Mr. Gage did not file a post-hearing brief and his pre-hearing brief was filed four days before his first entry for "trial prep."  (*See* ECF No. 132; *see also* ECF No. 154, p. 31.)  Thus, the time that Mr. Gage billed for trial prep only includes review of the evidentiary record and theory of his case.  However, while petitioner herself had a complicated medical history, there were only three experts in this case who submitted a total of 19 pages of expert reports.  This is not a large amount of expert material to review in preparation for an entitlement hearing.  Nor was the hearing itself particularly protracted or complicated.  The issues involved in this case, though involving a number of factual considerations, were not complex questions of medicine or law, and the hearing itself did not require a full two-days.

Gage P.C. has previously been warned about excessive and vague billing for trial prep and drafting work product.  *E.g. Yalacki*, 2020 WL 5049394 at *3 (reducing total fees by 5% for vague entries such as "hearing prep".); *see also Doe ex rel. Doe v. Sec'y of Health & Human Servs.*, No. XX-XXXV, 2010 WL 529425 (Fed. Cl. Spec. Mstr. Jan 29, 2010)(identifying several recordkeeping deficiencies where, *inter alia*, counsel used block billing that included 55.7 hours of "trial prep" and explaining that "counsel is put on notice that such billing practices will not continue to be tolerated, and such billing practices can be expected to provoke a reduction in the number of hours for which counsel is paid".).  Here, as explained above, Mr. Gage continues to engage in the same vague billing practices that he was warned of in the past.

For all these reasons I find that Mr. Gage's 138.1 hours of billed "trial prep" are unreasonable both for excessiveness and vagueness. Accordingly, I reduce these hours by 10%. Based on Mr. Gage's 2021 rate of $362 per hour, this results in **a total reduction of $4,999.22**.[3]

Attorneys' costs are subject to the same reasonableness requirements as attorneys' fees. *See Perriera v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375. The majority of the costs incurred in this case are for expert reporting with the remainder attributed to legal research, mailing, and medical records requests. (ECF No. 51-1, p. 75.)

Reasonable expert costs are calculated using the same lodestar method used when calculating attorneys' fees. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009). Regarding expert fees, "[t]he question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so." *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (quoting *Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V, 1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded*, 24. Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)). An expert retained by the petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate, and the petitioners have the burden of demonstrating that the expert costs incurred were reasonable. *Ceballos v. Sec'y of Health & Human Servs.*, No. 99–97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004).

In this case, petitioner presented one expert, Dr. Charles Lapp, who examined petitioner, provided two reports, and ultimately participated in a two-day entitlement hearing. His total bill was $25,515.00. (ECF No. 154, p. 76.) Apart from his time at hearing Dr. Lapp billed a little over 40 hours at $400 per hour, totaling $18,315.00. I find this reasonable. *Accord Bryan v. Sec'y of Health & Human Servs.*, 14-898V, 2021 WL 3011913, at *4-5 (Fed. Cl. Spec. Mstr. June 3, 2021). Additionally, Dr. Lapp billed a flat rate of $3,600 per day for testimony for a total of $7,200.00. (ECF No. 154, p. 99.) Flat rate billing for hearing testimony has previously been disallowed. *Halverson v. Sec'y of Health & Human Servs.*, No. 15-227V, 2021 WL 2768339, at *5 (Fed. Cl. Spec. Mstr. May 25, 2021) (explaining that "special masters have consistently ruled that experts should not be awarded flat rates, particularly for days spent in hearings that end before the close of business."); *see also Bean-Sasser v. Sec'y of Health & Human Servs.*, No. 13-326V, 2017 WL 4385749, at *6 (Fed. Cl. Spec. Mstr. Sept. 8, 2017) (declining to award an expert a flat rate when the hearing in question ended at 3:00 p.m.); *Culligan v. Sec'y of Health & Human Servs.*, No. 14-318V, 2016 WL 1622967, at *10 (Fed. Cl. Spec. Mstr. Mar. 31, 2016); *Jeffries v. Sec'y of Health & Human Servs.*, No. 99-670V, 2006 WL 3903710, at *18 (Fed. Cl. Spec. Mstr. Dec. 15, 2006). In this case, both hearing days began at 10:30am and ended at 4:33pm and 3:05pm respectively. Total hearing time over the two days was only about 10.5 hours. At his

---

[3] 138.1*0.10 = 13.81 hours reduced. Multiplied by the hourly rate is $4,999.22.

ordinary rate of $400 per hour, Dr. Lapp should be reimbursed $4,200.00 for his hearing participation, **a total reduction of $3,000.00**.

All other costs requested by petitioner are reasonable.

### IV.     Conclusion

Petitioner requested an award of interim fees and costs totaling $130,273.19. I have concluded an award of interim fees is appropriate. However, in light of the above, the following reductions were made: $428 (rate reduction re: Gerstein and Reiman); $7,393.58 (hours reduction re: interoffice communications); $144 (hours reduction re: duplicative billing); $4,999.22 (hours reduction re "trial prep"); $3,000 (hour reduction re Dr. Lapp's flat rate for testifying). Thus, with reductions, a reasonable award of interim attorneys' fees and costs is $114,308.39.

Accordingly, petitioner's application for interim attorneys' fees and costs is **GRANTED** and petitioner is awarded **a lump sum in the amount of $114,308.39, representing reimbursement for interim attorneys' fees and costs, in the form of a check made payable to petitioner and her counsel, Richard Gage of Richard Gage P.C.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

<u>s/Daniel T. Horner</u><br>
Daniel T. Horner<br>
Special Master

---

[4] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).