# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 14-1212V
Filed: March 22, 2023
PUBLISHED

| | |
|---|---|
| ALICIA SKINNER-SMITH,<br><br>           Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>           Respondent. | Special Master Horner<br><br>Tetanus Diphtheria and acellular Pertussis ("Tdap") vaccine; cause in fact; cellulitis; Damages |

*Richard Gage*, Richard Gage, P.C., Cheyenne, WY, for petitioner.
*Zoe Wade*, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON DAMAGES[1]

On December 17, 2014, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012),[2] alleging that the tetanus, diphtheria, acellular pertussis ("Tdap") vaccine that petitioner received on February 6, 2012, caused her to suffer an abscess, pain, and related injuries that became chronic. (ECF No. 1.) On August 15, 2022, I issued a Ruling on Entitlement finding petitioner entitled to compensation, but only for a local cellulitis injury and not her alleged broader chronic injury. (ECF No. 160; *see also Skinner-Smith v. Sec'y of Health & Human Servs*., No. 14-1212V, 2022 WL 4116896 (Fed. Cl. Spec. Mstr. Aug. 15, 2022).) I now find that petitioner is entitled to damages in the amounts discussed below.

---

[1] Because this document contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

I.      **Procedural and Factual History**

The full procedural history of the case leading up to the Ruling on Entitlement is set forth in the Ruling on Entitlement itself. While the case was initially within the Special Processing Unit ("SPU"), the Chief Special Master issued a finding of fact confirming that the subject vaccine was administered in petitioner's left dorsal gluteal muscle. (ECF No. 45; *see also Skinner-Smith v. Sec'y of Health & Human Servs.,* No. 14-1212V, 2016 WL 3180635 (Fed. Cl. Spec. Mstr. Apr. 27, 2016).) This was consistent with the fact finding urged by petitioner and corresponded to the location of her cellulitis. (ECF No. 13-2.) However, the respondent still intended to defend the case and it was therefore reassigned to Special Master Millman, who initially dismissed it on procedural grounds. (ECF No. 89; *see also Skinner-Smith v. Sec'y of Health & Human Servs.*, No. 14-1212V, 2018 WL 3991343 (Fed. Cl. Spec. Mstr. June 25, 2018*), review granted, decision rev'd*, 141 Fed. Cl. 348 (2018).) That determination was subsequently reversed and the case was remanded back to the Office of Special Masters. (ECF No. 103; *see also Skinner-Smith v. Sec'y of Health & Human Servs.,* 141 Fed. Cl. 348 (2018).) Thereafter, the parties primarily litigated whether petitioner's alleged chronic condition constituted vaccine-caused Chronic Fatigue Syndrome. As noted above, on August 15, 2022, I issued a Ruling on Entitlement finding petitioner entitled to compensation for a local cellulitis injury only and not her alleged broader chronic injury of Chronic Fatigue Syndrome. (ECF No. 160.)

In pertinent part, the Ruling on Entitlement explained that petitioner had received a Tdap vaccine in her left gluteal muscle on February 6, 2012, and that she returned for care on February 9, 2012, with left hip and lower back pain she associated to her vaccination. (*Id*. at 8.) At that time the site of injection was red, inflamed, and painful, and she had "positive induration of the left gluteus with erythema." (*Id.* (quoting Ex. 1, p. 441).) She was diagnosed as having cellulitis and prescribed antibiotics. (*Id.* (citing Ex. 1, p. 441; Ex. 1, pp. 439-40).) By February 14, 2012, the cellulitis was noted to have resolved, but with a residual minimally tender mass. (*Id.* (citing Ex. 1, p. 451).) It ultimately had not been necessary to lance or drain the wound. (*Id.* (citing Ex. 1, p. 542).) Thereafter, petitioner's medical records focus on other symptoms that were ultimately attributed to her alleged Chronic Fatigue Syndrome, which I found was not preponderantly linked to her Tdap vaccination. However, as of February 27, 2012, her physician did confirm a "little knot" at the injection site. (*Id.* at 9 (citing Ex. 1, p. 705).) Petitioner testified that this small defect still exists (Tr. 14), effectively confirming it to be permanent, and the experts agreed it is medically reasonable to consider that defect to be scar tissue from the cellulitis (*Id*. at 38 (citing Tr. 13-14, 240-41, 280)). Additionally, there are isolated instances in the medical record of petitioner complaining of buttock pain as late as September 12, 2012, which is approximately seven months post-vaccination. (*Id*. at 37 (citing Ex. 1, p. 22; Ex. 6, pp. 2-3).) Noting that petitioner's expert, Dr. Lapp, had disclaimed any connection between petitioner's cellulitis and the Chronic Fatigue Syndrome he posited (*Id*. at 38-39), this is the full extent of the sequela or residual effects of the cellulitis delineated by the Ruling on Entitlement.

On December 28, 2022, the parties advised that they were unable to informally resolve the appropriate amount of damages for this cellulitis injury. (ECF No. 176.) A follow up status conference was held on January 11, 2023. (ECF No. 177.) The parties agreed that the amount of damages should be resolved by the undersigned following the opportunity for the parties to submit simultaneous written briefs. (*Id*.) Respondent filed his brief on March 1, 2023, and petitioner filed her brief on March 13, 2023. (ECF Nos. 178-79.) Neither party requested an opportunity to file any reply. Accordingly, this issue is now ripe for resolution.

**II.    Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." § 300aa-15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." § 300aa-15(a)(1)(B). Finally, petitioners who have had their earning capacity adversely impacted due to their vaccine injury may receive "compensation for actual and anticipated loss of earnings determined in accordance with generally recognized actuarial principles and projections." § 300aa-15(a)(3)(A). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). In general, factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may also consider prior awards when determining what constitutes an appropriate award of damages. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."); *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (explaining that Congress contemplated that special masters would use their

3

accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, while potentially persuasive, decisions regarding prior awards are not binding. See Nance v. Sec'y of Health & Human Servs., No. 06–730V, 2010 WL 3291896, at *8 (Fed. Cl. Spec. Mstr. July 30, 2010); Hanlon v. Sec'y of Health & Human Servs., 40 Fed. Cl. 625, 630 (1998) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand.").

### III.  Party Contentions

Respondent contends that an appropriate award would total $10,000.00 (ECF No. 178, p. 1.) Respondent stresses the undersigned's observations that petitioner's permanent induration is "by all accounts minor and inconspicuous" and that it was a "close question" whether petitioner had satisfied the Vaccine Act's severity requirement. (Id. at 4 (quoting ECF No. 160, p. 38).) Respondent also notes that the record lacks any evidence that petitioner currently suffers any pain, discomfort, or embarrassment from her injury, or that it affects her daily life in any way. (Id.) Respondent characterizes his proffer of a $10,000.00 award as "extremely generous," citing a prior case that he indicates contemplated awards for scarring from between $5,000.00 to $15,000.00. (Id. at 4-5 (citing Hocraffer v. Sec'y of Health & Human Servs., No. 99-533V, 2007 WL 914914, at *5 (Fed. Cl. Spec. Mstr. Feb. 28, 2007).)[3] Respondent also cites a prior case involving an injection-site infection, inclusive of an incised and drained abscess, that was awarded only $500.00 in light of only a "negligible" impact. (Id. at 5 (citing Amorella-Moore v. Sec'y of Health & Human Servs., No. 91-1558V, 1992 WL 182194, at *1 (Cl. Ct. Spec. Mstr. Jul. 13, 1992).)[4]

Accompanying her memorandum regarding damages, petitioner has filed a declaration dated March 13, 2023. (Ex. 43.) Petitioner indicates that her buttock scar is

---

[3] Given the age of the decision in Hocraffer, I additionally note that the U.S. Bureau of Labor Statistics CPI Inflation Calculator indicates that a range of $5000.00 to $15,000.00 in February of 2007 would be equivalent to $7,350.65 to $22,051.95 in January of 2023, the most recent month for which data is currently available. See https://www.bls.gov/data/inflation_claculator.htm, last accessed March 13, 2023. It should be noted that the Hocraffer case did not itself involve any allegation of permanent scarring. Rather, the Special Master in that case specifically observed that there was no scarring. 2017 WL 914914, at *4. Instead, the Special Master's decision in Hocraffer cited by respondent addressed a case of Reyes Syndrome that purportedly resolved within 30 days with no lasting consequence and meeting the Vaccine Act's statutory severity requirement due to a surgical intervention (lumbar puncture). Any precise reason why the Special Master felt that the prior scarring cases were comparable to Hocraffer is not made explicit. Id. at 5. Hocraffer had a subsequent history; however, it was related to the scope of the Reyes syndrome and is not relevant to this case. See No. 99-533V, 2007 WL 5180525 (Fed Cl. Jul. 13, 2007), 366 Fed. Appx. 151 (Fed Cir. 2010).

[4] Again, given the age of the decision in Amorella-Moore, I additionally note that the U.S. Bureau of Labor Statistics CPI Inflation Calculator indicates that $500.00 in July of 1992 would be equivalent to $1,064.66 in January of 2023, the most recent month for which data is available. See https://www.bls.gov/data/inflation_claculator.htm, last accessed March 13, 2023.

sensitive to the touch and affects how she can sit.[5] She has had no indication from any of her doctors that this sensitivity will go away. (*Id.*) Petitioner in turn explains in her memorandum that at this point her injury occurred 11 years ago and that she currently has a future life expectancy of 24 years. (ECF No. 180, pp. 4-5.) She requests an award of $1,000.00 per year for both past and future pain and suffering. (*Id.*) Petitioner notes that this would result in an award of $11,000.00 for past pain and suffering as well as an award of $24,000.00 for future pain and suffering that would then need to be separately reduced to net present value. (*Id.*) Petitioner discusses the legal standard for awarding damages for pain and suffering, but does not offer any specific prior award as being comparable or distinguishable. Petitioner did not assert any damages apart from pain and suffering nor offer any documentation to support such a claim.

### IV.    Discussion

The medical records reflect that petitioner's cellulitis itself was considered resolved within about a week of her vaccination, but with a residual "knot" of scar tissue and contemporaneous documentation of residual pain over about seven months post vaccination. (Ex. 1, p. 22, 451, 705; Ex. 6, pp. 2-3.) Additionally, petitioner has testified that she still experiences pain to the touch at her injection site (Tr. 13; Ex. 43); however, her medical records confirm that the residual mass existing after resolution of her cellulitis was only "minimally" tender (Ex. 1, p. 451). Nothing in her testimonial evidence contradicts this characterization and it appears her ongoing discomfort stems largely from the fact that her injection was administered in her buttock and thus the tenderness affects her sitting.

Respondent's citation to *Amorella-Moore, supra,* demonstrates that, absent additional meaningful sequala, an injection-site infection can result in a *de minimis* award.[6] However, in addition to the far older cases cited by respondent, another petitioner was awarded $10,000.00 within the past year for a condition somewhat similar to what is presented in this case. *Yost v. Sec'y of Health & Human Servs.*, No. 18-288V, 2022 WL 4593029, at *11-12 (Fed. Cl. Spec. Mstr. Aug. 29, 2022). In that case, the petitioner's overall damages primarily related to an alleged SIRVA, but she also received a specific award for pain and suffering related to an abscess that persisted for at least five months and resulted in a small permanent scar. *Id*. Despite the scar being permanent, no future damages were separately awarded. This case is distinguishable in that on the one hand, petitioner's initial cellulitis seems to have resolved much more quickly, but on the other hand, she has provided testimony that it left her with a scar that is sensitive to the touch in addition to being seemingly permanent.

---

[5] Although not specifically raised in the analysis contained in the Ruling on Entitlement, this is also consistent with the testimony she provided during the hearing. (Tr. 13.)

[6] To the extent respondent argues that special masters should "reserve the statutory maximum" for the most severe cases (ECF No. 178, pp. 3-4), that specific point is not a factor in my analysis. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed Cl. 579 (2013).

5

Based on my review of the facts of this case and relevant prior caselaw, I conclude that a reasonable and appropriate award is as follows. Petitioner is awarded $7,500.00 for the pain and suffering associated with the initial occurrence of her cellulitis as reflected in her medical records between February and September of 2012 and the fact of her permanent scar. As in *Yost*, the fact of the scar alone does not necessitate any award of future damages. However, petitioner is awarded $250 per year for pain and suffering associated with ongoing minimal tenderness of her scar tissue.[7] This award is due largely to the unusual location of petitioner's injection site. Because petitioner was injected in her buttock, petitioner is credible in asserting that even the "minimal" tenderness to the touch documented in her medical record presents ongoing discomfort in her daily life (*i.e.* when sitting) that would not necessarily have been an issue if her vaccination had been injected in her deltoid. From October of 2012 through March of 2023, this constitutes approximately ten and a half years of additional past pain and suffering totaling $2,625.00. Thus, petitioner is awarded a total of $10,125.00 for past pain and suffering. Further to that, petitioner's representation that she has a remaining life expectancy of 24 years is unrebutted. Therefore, petitioner is also awarded $6,000 in future pain and suffering that will need to be separately reduced to net present value.

### V.     Conclusion

The parties shall file a joint status report by no later than <u>Tuesday, March 28, 2023</u>, converting the award of future pain and suffering to its net present value. Once the issue of net present value for the future award is resolved, a damages decision will issue.

**IT IS SO ORDERED.**

<u>s/Daniel T. Horner</u><br>
Daniel T. Horner<br>
Special Master

---

[7] Although not directly analogous, I note by way of example that SIRVA petitioners experiencing ongoing shoulder complaints have been awarded future pain and suffering ranging from $250 per year to $1,500 per year depending on the severity of the residual pain and the degree of ongoing disability. *See, e.g. Lang v. Sec'y of Health & Human Servs.*, No. 17-995V, 2022 WL 3681275, at *12 (Fed. Cl. Spec. Mstr. Jul. 25, 2022).